*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0366P (6th Cir.)
File Name: 03a0366p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SAMUEL J. CAVIN,
    *Plaintiff-Appellant,*

    *v.*

HONDA OF AMERICA
MANUFACTURING, INC.,
    *Defendant-Appellee.*

No. 02-3357

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00400—John D. Holschuh, District Judge.

Argued: July 29, 2003

Decided and Filed: October 10, 2003

Before: DAUGHTREY and MOORE, Circuit Judges;
CALDWELL, District Judge.[*]

---

[*] The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

---

## COUNSEL

**ARGUED:** Joshua J. Morrow, LAW OFFICES OF JOHN S. MARSHALL, Columbus, Ohio, for Appellant. Mary Ellen Fairfield, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. **ON BRIEF:** Joshua J. Morrow, John S. Marshall, LAW OFFICES OF JOHN S. MARSHALL, Columbus, Ohio, for Appellant. Mary Ellen Fairfield, Robert N. Webner, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellee. Patrick J. Perotti, DWORKEN & BERNSTEIN, Painesville, Ohio, for Amicus Curiae.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Samuel J. Cavin ("Cavin") appeals the district court's dismissal of his claim of wrongful discharge in violation of public policy and the district court's grant of summary judgment to Defendant-Appellee Honda of America Manufacturing, Inc. ("Honda") on Cavin's claim that Honda interfered with his rights under the Family and Medical Leave Act of 1993 ("FMLA" or "Act"). Cavin was employed by Honda from 1991 until 1999. Cavin violated Honda policy in June 1999 by failing to notify Honda's Leave Coordination Department of his need for leave within the required time period and again in October 1999 by failing timely to submit a medical certification form. Honda terminated Cavin in November 1999 for violating its leave policy. Cavin filed a suit alleging that Honda had interfered with his FMLA rights and wrongfully discharged him in violation of Ohio public policy. The district court dismissed Cavin's wrongful-discharge claim and granted Honda summary judgment on the FMLA-interference claim. Cavin appeals these decisions.

For the reasons explained below, we **AFFIRM** the district court's decision to dismiss the wrongful-discharge claim. However, we **REVERSE** the district court's grant of summary judgment on the FMLA-interference claim and **REMAND** the action for further proceedings.

## I.  FACTS AND PROCEDURE

Cavin worked as a production associate in Honda's assembly department from 1991 until 1999. As a Honda employee, Cavin received an Associate Handbook ("Handbook") which contained detailed information about Honda's leave policies. In the event of an absence, a Honda employee "must notify either Plant Security, [his] department, or Administration prior to the beginning of [his] scheduled shift, or as soon as reasonable."[1] Joint Appendix ("J.A.") at 290 (Handbook). According to Honda, employees may call security to report a vacation day, "a one-day absence," or "a one-day sickness." J.A. at 362 (Patterson Dep.). However, when an employee's "absence continues beyond one day away from work . . . [he] should contact Administration — Leave Coordination." J.A. at 290 (Handbook). If the need for leave is unforeseeable, leave must be requested "no later than three (3) consecutive workdays of the first day missed. The first day missed counts as day one." J.A. at 294 (Handbook).

---

[1]When an employee notifies security of his absence, information about the absence and the reason for the absence is conveyed to the employee's supervisor so that the supervisor can cover the shift. However, Honda policy does not dictate that security will notify the Leave Coordination Department that an employee may need a leave of absence when the employee calls in to report that he cannot work due to serious illness. Moreover, Honda does not instruct security to notify employees who report an illness that they may need to contact the Leave Coordination Department. *See* Joint Appendix ("J.A.") at 390 (Tribune Dep.) ("When the associate calls into security and says they're going to be absent, they need to request to speak to Leave Coordination specifically, and then security will transfer the call to LCD.").

The Handbook provides that whenever an employee falls below 98 percent attendance, Honda will strive to help the employee improve his attendance through a progressive-counseling system designed to ensure that employees understand the attendance policy. However, failure to comply with Honda's "established attendance guidelines" and "leave of absence requirements," J.A. at 288 (Handbook), "will result in corrective action up to and including suspension without pay or separation from employment," J.A. at 287 (Handbook). In fact, if an employee is "absent for three consecutive workdays without notifying Administration — Leave Coordination, [he] will be separated from employment." J.A. at 290 (Handbook).

On June 21, 1999, Cavin injured his right shoulder in a motorcycle accident. Cavin was treated in the emergency room of St. Ann's Hospital and released the same day with a prescription for pain medication. The emergency room physician wrote Cavin a note excusing him from work until June 24, 1999. When he returned home from the hospital, Cavin called Honda to inform the company that he needed to take time off work because he was injured in a motorcycle accident. According to Cavin,

> When I called in on the 21st and security asked my reason for calling in, I stated that it was a motorcycle accident. And I knew that when I was a team leader we had a call-in screen [on the company's computer system] that could tell us why a person was not coming to work, and when I stated motorcycle accident, they also asked me when I planned on returning. I gave them a return date, and I thought that information would have been communicated to my coordinator.

J.A. at 251 (Cavin Dep.). There is no evidence that Cavin informed security at that time that he would be absent for more than one day.

Cavin received treatment from a second doctor, Dr. Scott D. Cohen ("Cohen"), the day after the accident. Cohen excused Cavin from work until June 28, 1999. According to Cavin, during his absence he "called the company everyday [sic] that [he] was scheduled to work to inform the company of [his] status." J.A. at 135 (Cavin Aff.). Cavin reported his absence to security every day during the week of June 21-25. The following week, Cavin was not scheduled to work because there was a scheduled plant shutdown. Cavin returned to work on July 6, 1999, two weeks after the first day of his absence, at which time Cavin finally notified the Leave Coordination Department of his need for a leave of absence.

When Cavin returned from leave on July 6, his supervisor and several other Honda employees knew that Cavin had been in a motorcycle accident and inquired about how he was doing. That day, Cavin received what Honda refers to as progressive counseling, or coaching, for employees with less than 98 percent attendance. Counseling is an element of Honda's "progressive discipline" structure for attendance violations. J.A. at 353 (McClellan Dep.). Linda McClellan ("McClellan"), a representative of Honda's Associate Relations Department, met with Cavin and reviewed Honda's leave policies. She informed Cavin that any future violation of company policy would result in his separation.

Cavin explained to McClellan that he had been injured in a motorcycle accident on June 21, had been excused from work through June 24 by the emergency room doctor, and further excused until June 28 by a second doctor. Cavin told McClellan that he had called Honda every day to report his absence and gave her the return to work slips that his doctors had signed to excuse him. Honda gave Cavin a leave coordination packet, instructing Cavin to have his doctor complete the forms and to return the packet by July 21, 1999. Cavin timely completed the packet, in which Cohen certified that Cavin's June 21-28 leave was due to a serious health condition.

On July 7, 1999, Honda disallowed a portion of Cavin's leave under the FMLA on grounds that the absences were not approved. Cavin had violated Honda's leave policy by failing to call Honda's Leave Coordination Department within three consecutive workdays of his first day of leave.[2] Honda refused to approve Cavin's absences for June 21-23 as FMLA-qualifying leave, recognizing only June 24-25 as qualifying leave. Cavin was forced to take a vacation day to cover his June 21 absence.

Cavin missed work several times during the following months because he was suffering from extreme pain in the shoulder that was injured during the motorcycle accident. Honda approved Cavin's July 15-20 and July 23-28 leaves of absence as FMLA-qualifying, but denied his final request for FMLA leave on grounds that he failed timely to submit a certification form for the September 30-October 4 absence. To receive FMLA leave for this period, Cavin was required to submit a certification form to the Leave Coordination Department before October 19. Cavin met the deadline, but the certification was facially incomplete; it did not include the dates of treatment or incapacity. The Leave Coordination Department instructed Cavin to submit a completed form by October 27. Cavin failed to meet the new deadline when his doctor did not timely submit the form to Honda.[3] Because

---

[2] Although Cavin claims he was unaware of the Leave Coordination Department policy, Honda notes that Cavin had contacted the Leave Coordination Department to obtain approval for a leave of absence in 1998.

[3] The Leave Coordination Department finally received the form on November 8, 1999. The form indicated that Cavin received treatment on September 30, October 1, and October 4. However, Cavin now admits that the certification form included inaccurate information, "incorrectly report[ing] that plaintiff received treatment by Dr. Cohen on September 30, 1999, October 1, 1999, and October 4, 1999." J.A. at 62 (Cavin Admissions). As Cavin notes, there is a factual question as to whether Cavin misrepresented anything to Honda, given that Cohen completed the certification form. Regardless, this misrepresentation clearly was not a

Honda did not timely receive the certification, Cavin was disciplined a second time in November 1999. Honda then fired Cavin for violating the Honda leave policy twice.

On April 3, 2000, Cavin filed a suit in the United States District Court for the Southern District of Ohio, alleging that Honda had interfered with his FMLA rights and wrongfully discharged him in violation of Ohio public policy. Honda filed a motion to dismiss the wrongful discharge claim, and the district court granted the motion on March 28, 2001. *Cavin v. Honda of Am. Mfg., Inc.*, 138 F. Supp. 2d 987, 998 (S.D. Ohio 2001) (*Cavin I*). Honda then filed a motion for summary judgment on the FMLA claim, which the district court granted on February 22, 2002. *Cavin v. Honda of Am. Mfg., Inc.*, No. C2-00-400, 2002 WL 484521, at *25 (S.D. Ohio Feb. 22, 2002) (*Cavin II*).

Cavin filed a timely notice of appeal. On appeal, "Cavin chose to simplify his claim . . . by only appealing the June 1999 denial of FMLA" and by declining to appeal the district court's grant of summary judgment with respect to Cavin's September-October leave.[4] Cavin Reply Br. at 4 n.1. The

---

factor in Honda's decision to separate Cavin because Honda was not aware of the misrepresentation at the time of Cavin's termination. We do recognize, however, that the misrepresentation may be relevant to the calculation of Cavin's damages. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 361-62 (1995) (explaining that when an employer learns of an employee's wrongdoing after improperly terminating the employee on other grounds, "as a general rule . . . neither reinstatement nor front pay is an appropriate remedy. . . . The beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered").

[4] The district court reasoned that "Cavin's termination is based on two separate alleged violations of the leave policy, neither of which, standing alone, would be sufficient grounds for termination . . . . If a reasonable jury could find that either of these absences should have been designated as FMLA-qualifying leave, summary judgment must be denied." *Cavin*

National Employment Lawyers Association ("NELA"), a "professional membership organization of lawyers who represent employees in discrimination, wrongful discharge, employee benefit, and other employment-related matters," filed an amicus brief in support of Cavin. NELA Br. at 1.

## II. THE FAMILY AND MEDICAL LEAVE ACT

The district court granted Honda summary judgment on Cavin's claim that Honda interfered with his rights under the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §§ 2601 *et seq. See Cavin II*, 2002 WL 484521, at *25. According to the district court, no reasonable juror could have found that Cavin provided Honda "with timely, adequate notice of his need for FMLA leave" because Cavin did not follow Honda's policy for contacting the Leave Coordination Department. *Id.* at *14. Cavin argues that Honda did receive timely actual notice of Cavin's leave and therefore Honda interfered with Cavin's FMLA rights when it denied a portion of Cavin's June 1999 leave and disciplined him.

This court reviews de novo a district court's grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *Kincaid v. Gibson*, 236 F.3d 342, 346 (6th Cir. 2001). Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

*v. Honda of Am. Mfg., Inc.*, No. C2-00-400, 2002 WL 484521, at *9 (S.D. Ohio Feb. 22, 2002) (*Cavin II*). *But see* Cavin Reply Br. at 4 n.1 ("[T]he record is clear that if Honda would have approved the June 1999 leave, Cavin would not have been fired in November 1999. An appeal of the September-October leave would be superfluous.").

Fed. R. Civ. P. 56(c). However, "if the evidence is such that a reasonable jury could return a verdict for a nonmoving party," then summary judgment will not lie. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences that may properly be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A. FMLA Interference Claims

The FMLA entitles qualifying employees to twelve weeks of unpaid leave each year if, among other things, an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Congress enacted the FMLA because, among other reasons, "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). The FMLA "accommodates the important societal interest in assisting families by establishing minimum labor standard[s] for leave." H.R. Rep. No. 103-8(I), 103d Cong., 1st Sess. 1993, at *21 (hereinafter "Cong. Rep.").

Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1); *see* 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act."). Employers who violate § 2615 are "liable to any eligible employee affected" for damages and "for such equitable relief as may be appropriate." 29 U.S.C. § 2617(a)(1).

Cavin maintains that Honda interfered with his rights under the FMLA by refusing to recognize his June 21-23 absence as

FMLA-qualifying leave. To prevail on an interference claim, a plaintiff must establish that (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled. *See Price v. Multnomah County*, 132 F. Supp. 2d 1290, 1297 (D. Or. 2001); *see generally Arban v. West Publ'g Co.*, Nos. 01-2278/2370, --- F.3d ---, 2003 WL 22189281, at *7-8 (6th Cir. Sept. 24, 2003). Honda concedes that during the relevant time period, Honda was an employer and Cavin was an eligible employee for FMLA purposes. Honda also concedes that Cavin would have been entitled to take FMLA leave for June 21-23 had he given appropriate notice, as Honda recognized Cavin's June 24 and June 25 absences arising from the same circumstances as qualifying leave.[5] Ultimately, Honda contends that Cavin's interference claim fails because Cavin did not give Honda proper notice of his intention to take leave.

## B. Cavin's Notice to Honda

Honda's Associate Handbook articulates the following procedure for employees seeking a leave of absence:

> If you require a leave of absence, you must formally request a leave from the Administration — Leave

---

[5] "[A]n illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider" is considered a "[s]erious health condition" for FMLA purposes. 29 U.S.C. § 2611(11). Cavin was incapacitated for more than three days and was treated by a health care provider more than once. Honda clearly accepted that Cavin's injuries from the accident constituted a "serious health condition" because it granted some of Cavin's FMLA claims arising out of the same incident, recognizing his June 24-25, July 15-20, and July 23-28 absences as qualifying leave.

Coordination Department.  Your request must be made in a timely manner:
- If your need for a leave is foreseeable, you must request the leave at least thirty- (30) days (or as soon as practicable) before your leave is to begin.
- If your need for a leave is not foreseeable, you must request the leave no later than three (3) consecutive workdays of the first day missed.  The first day missed counts as day one.

J.A. at 294 (Handbook).  Honda's timing requirements are consistent with the FMLA's requirements for foreseeable leave, *see* 29 U.S.C. § 2612(e)(1); 29 C.F.R. § 825.302(b), and for the most part more generous than the FMLA's requirements for unforeseeable leave,[6] *see* 29 C.F.R. § 825.303(a) ("It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave.").  However, Cavin violated Honda's policy by failing to request a leave of absence from the Leave Coordination Department within three consecutive workdays of the first day of work missed due to the motorcycle accident.

**1. Honda's Policy is Inconsistent with the FMLA**

Cavin contends that Honda's policy is inconsistent with the notice requirements set forth in the FMLA.  Specifically, Cavin argues that the FMLA would not permit employers to deny otherwise-qualifying FMLA leave simply because an employee fails to follow a company's internal notice requirements.  Although the regulations do specifically contemplate the establishment of notice policies by individual

---

[6]Honda's timing requirements are more stringent because the regulations do not strictly limit the timing of notice when an employee's need for leave is not foreseeable.  Instead, the regulations acknowledge that under "extraordinary circumstances . . . such notice is not feasible," in which case notice should be given "as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).

employers, we agree with Cavin that the FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA.

Honda policy requires an employee to notify the Leave Coordination Department of his need for leave "no later than the third day missed."  J.A. at 290 (Handbook).  Cavin was absent five days from June 21 through June 25, he was excused from work the following week due to a plant shutdown, and he returned to work on July 6.  On July 6, Cavin notified the Leave Coordination Department of his need for leave.  Honda apparently concluded that Cavin provided timely notice to the Leave Coordination Department with respect to his June 24 and June 25 absences — because July 6 was not more than the third workday from those days missed — and recognized those two days of leave as FMLA-qualifying.  However, because Cavin failed to notify the Leave Coordination Department within three workdays of his absence on June 21-23, Honda denied those days.  Honda's internal notice requirements thus may foreclose relief otherwise available under the FMLA.  We must determine whether Honda's notice requirements are consistent with the FMLA.

The regulations governing the application of the FMLA state that an employee with a foreseeable need for leave "shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave."  29 C.F.R. § 825.302(c).  However, in the context of requests for foreseeable leave, the regulations also state that

An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. . . . However, failure to follow such internal employer procedures will not permit an employer to disallow or

delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.

29 C.F.R. § 825.302(d). The regulations do not so explicitly discuss employer notice procedures in the context of an employee's unforeseeable need for leave, noting only that when an employee requires emergency medical leave, an employer cannot require advance written notice pursuant to its internal rules and procedures. 29 C.F.R. § 825.303(a); *see Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1208 (S.D. Cal. 1998) ("The Act does not specify the form of notice that is required for foreseeable leave, and interestingly the Act makes no reference to any notice requirement for unforeseeable leave.").

In this case, we must focus on § 825.303 because Cavin's need for leave was not foreseeable. Clearly the emergency medical leave provision of § 825.303 does not apply here because Honda's policy did not require advance written notice at all. Beyond the emergency medical leave provision, the regulation governing unforeseeable need for leave makes no other references to an employer's internal requirements. In light of this silence, the Tenth Circuit, in an unpublished opinion, interpreted the regulation to mean that the FMLA prohibits an employer from enforcing *only* its requirement of advance written notice and, even then, only in the context of emergencies. *Holmes v. The Boeing Co.*, No. 98-3056, 1999 WL 9760, at *3 (10th Cir. Jan. 12, 1999). The Tenth Circuit reasoned that "[t]he FMLA does not prohibit an employer from requiring its employees to give notice to specific company supervisors on the day the employee is going to be absent in a nonemergency situation, as in this case." *Id.* The *Holmes* court thus concluded that an employee cannot seek FMLA relief in the event of his noncompliance with his employer's specific notice requirements absent an "alleg[ation] that his physical condition was such that he *could not comply* with defendant's reasonable notice requirements." *Id.* (emphasis added). Similarly, the Seventh Circuit in *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706

(7th Cir. 2002), concluded that an employer did not violate the FMLA by discharging an employee who "failed to comply with applicable company rules and policies" regarding leave notice where "it was *not impossible*" for her to do so. *Id.* at 710 (emphasis added).

We conclude that the Seventh and Tenth Circuits have misinterpreted the FMLA's notice requirements. Their interpretations are contrary to the goals of the FMLA and inconsistent with the regulation of notice in situations where an employee has a foreseeable need for leave. Rather than simply drawing an inference from the silence of § 825.303 about employer notice requirements other than advance written notice, we read § 825.303 in the context of the FMLA itself and § 825.302.

As an initial matter, we note that the discussion in § 825.302 about employer notice procedures in the context of an employee's foreseeable need for leave should also apply in the context of an employee's unforeseeable need for leave. It would be illogical to conclude that Congress intended to prohibit employers from "disallow[ing] or delay[ing] an employee's taking of FMLA leave" for failure to comply with "internal employer procedures" in the context of foreseeable need for leave, but not in the context of unforeseeable need for leave. 29 C.F.R. § 825.302(d). The regulations suggest that notice requirements for unforeseeable leave are more relaxed than the requirements for foreseeable leave, in keeping with the idea that an unforeseeable need for leave will often arise in the context of a medical emergency. Therefore, there is no principled reason to conclude that employers may "disallow or delay an employee's taking FMLA leave" for "failure to follow . . . internal employer procedures" in the context of unforeseeable leave when they are prohibited from doing so in the context of foreseeable leave. *Id.*

Moreover, the conclusion that employers cannot deny FMLA leave on grounds that an employee failed to comply

with internal procedures — as long as "the employee gives timely verbal or other notice" — is consistent with the purpose of the FMLA. 29 C.F.R. § 825.302(d). In enacting the FMLA, one problem that Congress sought to remedy was the "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). Congress sought to articulate a "minimum labor standard for leave" that employers would not be able to limit. Cong. Rep. at *21. "Central to the purposes of the FMLA is that its provisions apply even where the entitlements created by the Act are in excess of those that an employer would be willing or able to provide on its own." *Marrero v. Camden County Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 463 (D.N.J. 2001) (citing 29 C.F.R. § 825.101). Some courts have struck employer policies that impose more stringent requirements on employees seeking FMLA leave. *See, e.g., id.* (striking an internal policy requiring a doctor's certification within five days rather than the fifteen days provided for under the FMLA); *Mora*, 16 F. Supp. 2d at 1218 ("Defendant's policy that employees call within thirty minutes of the beginning of their shift is inconsistent with the FMLA and is inapplicable to employees requesting FMLA qualifying leave."). In permitting employers to develop notice procedures, the Department of Labor did not intend to allow employers in effect to undermine the minimum labor standard for leave.

Reading § 825.303 in the context of the FMLA and § 825.302, we conclude that employers cannot deny FMLA relief for failure to comply with their internal notice requirements. Therefore, we conclude that Honda could not interfere with Cavin's FMLA rights by enforcing its notice requirements to deny Cavin benefits to which he otherwise may have been entitled under the FMLA.

### 2. Cavin's Compliance with the FMLA

"[W]here an employer's internal policies conflict with the provisions of the FMLA, the FMLA controls and an

employee need only comply with the requirements of the Act to invoke its protections." *Marrero*, 164 F. Supp. 2d at 463-64. Having concluded that Cavin was not obligated to comply with Honda's requirement that he notify the Leave Coordination Department, we proceed to evaluate whether, viewing the facts in a light favorable to Cavin, he complied with the notice requirements of the FMLA.

When discussing notice requirements in other statutory contexts, this court has said that "adequacy of notice is consistently regarded as a finding of mixed fact and law." *Burkhart v. Post-Browning, Inc.*, 859 F.2d 1245, 1249 (6th Cir. 1988) (analyzing the notice provisions of the Vietnam Era Veterans' Readjustment Assistance Act of 1974). We have distinguished the factual and legal aspects of notice as follows:

> [T]he question of whether any notice was given, and if so, what the notice consisted of and when it was given, is one of fact. However, the question of whether the notice satisfied the statutory requirement is one of law. Thus, the issue of notice in this case presents a mixed question of fact and law.

*K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1111 (6th Cir. 1982) (analyzing notice requirements for breach of warranty claims under a state statute). In a recent unpublished opinion, however, a panel of this court characterized the issue of adequate notice under the FMLA as involving "primarily questions of fact . . . not questions of law." *Williams v. Schuller Int'l, Inc.*, No.00-3614, 2002 WL 193929, at *3 (6th Cir. Feb. 5, 2002). In spite of this recent unpublished opinion, however, it seems more accurate to describe notice as a mixed question: surely there are some facts that as a matter of law are not sufficient reasonably to apprise an employer of an employee's need for leave. Although it is within the province of the jury to determine the facts of the notice given, it is for the court to determine whether those facts are sufficient reasonably to give an

employer notice as required by the FMLA. Therefore, for summary judgment purposes, we should determine whether, viewing the facts in the light most favorable to Cavin, Cavin has complied with the FMLA's notice requirements as a matter of law.

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). However, "[a]n employee does not have to expressly assert his right to take leave as a right under the FMLA." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999); *see* 29 C.F.R. §§ 825.302(c), 825.303(b). Because an employee need not expressly invoke the FMLA, "[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523 (quotation omitted). "[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred*." Hammon*, 165 F.3d at 451. We agree with the Fifth Circuit that it would be inappropriate to articulate categorical rules governing the content of notices, instead recognizing that "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995).

Cavin called security on the day of his motorcycle accident to inform Honda of his absence. According to Cavin, "[w]hen I called in on the 21st and security asked my reason for calling in, I stated that it was a motorcycle accident." J.A. at 251 (Cavin Dep.). He told security that he expected to return to work the following day, but after receiving treatment from another doctor Cavin called in absences for several additional days on a daily basis. According to Cavin's affidavit of June 22, 2001,

On June 21, 1999, I was in a motorcycle accident in which I was badly injured. On this same day, I called Honda to inform the company that I just got out of the hospital because I was injured in a motorcycle accident. I told Honda that I could not work. Thereafter, I called my company everyday [sic] that I was scheduled to work to inform the company of my status. When I returned from leave on July 6, 1999, many employees at Honda knew that I had been injured in a motorcycle accident. Many of these employees, such as Judd, Jock, and Steve asked how I was feeling after the accident. Shawn Dobbins, my supervisor at the time, also asked how the accident occurred, how I was feeling, and if I was alright.

J.A. at 135 (Cavin Aff.). According to Honda, Cavin only "told the security desk that he had been in an accident, could not work that day, and would be back at work the next day."[7] Honda Br. at 20. Honda notes that Cavin never requested leave, did not state that he would need to miss work for an extended period, and failed to provide any other information that might lead Honda to conclude that Cavin was experiencing a "serious health condition" for FMLA purposes. Clearly there is a disputed issue of material fact as to the content of the notice Cavin gave Honda on June 21.

Summary judgment for Honda is nevertheless appropriate if, viewing these disputed facts in the light most favorable to Cavin, Cavin failed to give his "employer enough information for the employer to reasonably conclude that an event described in FMLA § [2612(a)(1)] has occurred." *Hammon*, 165 F.3d at 451. Pursuant to § 2612, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health

---

[7] Cavin now maintains that he did not tell security that he would return to work the following day. However, because Cavin disputes this fact only in his brief before this court and stated in his sworn deposition that he told Honda that he would return to work the following day, we do not regard this as a disputed fact.

condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1). In the context of the FMLA, "[t]he term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves — (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

We conclude that for summary judgment purposes Cavin's notice to Honda was sufficient to apprise Honda of his "request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523. In his affidavit, Cavin stated that he told security he "was injured in a motorcycle accident" and that he "just got out of the hospital." J.A. at 135 (Cavin Aff.). Although "a person who is involved in a car accident does not necessarily incur a serious health condition," *Reich v. Midwest Plastic Eng'g, Inc.*, No. 1:94-CV-525, 1995 WL 514851, at *4 (W.D. Mich. July 26, 1995), Cavin specifically informed Honda (1) that he had been at the hospital, and (2) that he was unable to work due to his injury. Thus Cavin did not merely state that he was involved in a motorcycle accident, but rather provided additional information about his treatment and condition — he told Honda that he was unable to perform his job because of his injury. *See id.* (explaining that an employee involved in a car accident should inform the employer of his hospitalization as a result of the accident and of his condition in order to give the employer notice for FMLA purposes).

Honda attempts to make much of the fact that Cavin never discussed a leave of absence with security when he called to inform security that he would not be at work. However, we conclude that Cavin's failure to use the word "leave" or the phrase "leave of absence" is of no consequence in assessing whether Honda received sufficient notice pursuant to the requirements of the FMLA. Just as an employee can give an employer notice of his request for FMLA-qualifying leave without invoking the FMLA, *see Hammon*, 165 F.3d at 450,

an employee can give notice sufficient to make his employer aware that he needs FMLA-qualifying leave without using the words "leave" or "leave of absence."

We recognize that in some cases, there may be a question of whether or not an employee gave notice to his *employer*. The amicus brief filed by the NELA emphasizes urges this court to recognize a broad definition of "employer" in the FMLA context. However, we need not decide the scope of the definition of "employer" under the FMLA in this case. Honda, assuming for the sake of argument that its internal notice requirements were not applicable to Cavin, does not argue that notice was given to the wrong individual, but rather Honda only contends that the contents of the notice given were insufficient to provide the adequate notice required by the FMLA.

Even if we were to evaluate whether the person to whom Cavin gave notice was his "employer," however, we believe that Cavin's notice to security should be deemed notice to Honda under the circumstances.[8] Honda specifically directs employees to report their absences to security. Although Honda might have notice of an absence when an employee contacts security, it claims to have no notice of a need for a leave of absence until an employee contacts the Leave Coordination Department. We recognize that it is both appropriate and efficient for Honda to delegate the management of all FMLA claims to one department and that it has chosen the Leave Coordination Department for this

---

[8] Even if notice to security did not constitute notice to Honda, we would conclude that Honda had actual notice of Cavin's potential need for leave. Viewed in the light most favorable to Cavin, the evidence indicates that Cavin's supervisor had actual notice. The knowledge of Cavin's supervisor should be imputed to Honda management, as it generally is in other statutory contexts. *See, e.g., Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 975 (N.D. Ill. 1999) (explaining that under the Fair Labor Standards Act, "[k]nowledge of its supervisors is imputed to the employer").

purpose. *See Cavin II*, 2002 WL 484521, at \*14 ("The goals of the FMLA are more likely to be met when a large company coordinates FMLA leave through one department that is familiar with the FMLA and its accompanying rules and regulations. The FMLA is designed to provide job security to employees, but the employees' needs must be balanced with the legitimate interests of the employers."). However, we are not persuaded that notice to security constitutes notice to Honda only of the event of an absence, but not of a need for a leave of absence.[9]

In light of the above analysis, we conclude that Cavin's notice to Honda of his unforeseeable need for leave may meet the requirements of the FMLA. If Honda lacked "sufficient information about the employee's reason for taking leave, [it] should [have] inquire[d] further to ascertain whether the paid leave is potentially FMLA-qualifying." *Manuel*, 66 F.3d at 762 (quotation omitted). Viewing the facts in the light most favorable to Cavin, Honda was on notice and had a duty to collect additional information from Cavin that would be necessary to make his leave comply with FMLA requirements.

## C. Damages

Finally, Honda argues that even if it interfered with Cavin's FMLA rights in June 1999, Cavin suffered no cognizable injury as a result of that interference and therefore cannot

---

[9]Honda perhaps may not receive actual notice of leaves of absence from security in light of the fact that Honda policy does not require communication between security and the Leave Coordination Department. But if Honda wants the Leave Coordination Department to be aware of all potential leaves of absence, it can take several steps to protect itself. For example, upon learning of an employee's potential need for a leave of absence, security could transfer the call to the Leave Coordination Department, directly contact the Leave Coordination Department to notify them of a possible candidate for leave, or even inform the employee that he should contact the Leave Coordination Department.

recover under § 2617. Even when an employee proves that his employer violated § 2615,

> § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, __, 122 S. Ct. 1155, 1161 (2002). According to Honda, Cavin suffered direct harm only as a result of his September-October leave.

The regulations clearly provide that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies," 29 C.F.R. § 825.220(c), suggesting that employment actions affected by such considerations are cognizable harms under § 2617; *see Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) (explaining that to prevail on an FMLA interference claim, an employee "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her"). Thus, "a termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA." *Barnett v. Revere Smelting & Refining Corp.*, 67 F. Supp. 2d 378, 388 (S.D.N.Y. 1999).

Cavin arguably suffered direct harm as a result of the June incident. Cavin was coached about Honda leave policies, which the company considered to be "the first step in progressive discipline." J.A. at 353 (McClellan Dep.); *cf.* J.A.

at 291 (Handbook) ("The purpose of coaching and counseling for attendance is to confirm your understanding of the attendance policy, gain understanding of the reasons for your absenteeism, and to help correct the attendance situation."). Moreover, when the facts of Cavin's separation were presented to Honda's employee review panel, it was emphasized that the September-October incident was not the sole reason for Cavin's separation. The review panel was told that Cavin had violated Honda's leave of absence policy in June, at which time he "received a re-education/coaching on our leave of absence policy." J.A. at 168 (Review Panel). It was further emphasized before the review panel that

> [T]his one incident did not on its own separate Mr. Cavin from employment. Mr. Cavin was put on notice in July that if future violations occurred he would be seperated [sic]. . . . Mr. Cavin disregarded [Honda] policy and the direction that was given to him on July 6, 1999.

J.A. at 168 (Review Panel). Because these facts were included in the presentation to the review panel evaluating Cavin's separation, Honda's conclusion that the June absences were not FMLA-qualifying leave was arguably a "negative factor" in Honda's decision to separate Cavin. 29 C.F.R. § 825.220(c). Therefore, Cavin has introduced sufficient evidence to establish a genuine issue of material fact about whether he was harmed by the June incidents.

### III. WRONGFUL DISCHARGE IN VIOLATION OF OHIO PUBLIC POLICY

Cavin also appeals the district court's dismissal of his Ohio common-law claim for wrongful discharge in violation of public policy. *See Cavin I*, 138 F. Supp. 2d at 994. We review de novo a district court's decision to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 205 F.3d 906, 909 (6th Cir. 2000). After the briefs were filed in this case, the Ohio Supreme Court declined to recognize such a cause

of action, holding that "as a matter of Ohio common law, a cause of action for wrongful discharge in violation of public policy based solely on an employer's violation of the FMLA . . . is unnecessary to vindicate the policy goals of the FMLA." *Wiles v. Medina Auto Parts*, 773 N.E. 2d 526, 528 (Ohio 2002). Because Ohio does not recognize a cause of action for wrongful discharge in violation of the public policy embodied in the FMLA, we affirm the district court's dismissal of Cavin's wrongful-discharge claim.

### IV. CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's dismissal of Cavin's wrongful-discharge claim and **REVERSE** and **REMAND** for further proceedings regarding Cavin's FMLA-interference claim.