NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0540n.06

No. 08-4134

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 05, 2009**
LEONARD GREEN, Clerk

ROBERT W. ANDERSON,                      )
                                          )
    Plaintiff-Appellant,                  )
                                          )
v.                                        )   ON APPEAL FROM THE UNITED
                                          )   STATES DISTRICT COURT FOR
AVON PRODUCTS, INC., EMILIO SHAO, and     )   THE SOUTHERN DISTRICT OF
CHUCK GUTZWILLER,                         )   OHIO
                                          )
    Defendants-Appellees.                 )
                                          )

Before: COLE, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Plaintiff Robert Anderson appeals the district court's grant of summary judgment to the defendants on his disability and reverse-race-discrimination claims. We affirm.

I.

A.

Defendant Avon Products, Inc. (Avon) hired Anderson in December 2002 as a senior chemistry technician. In January 2003, Anderson requested, and Avon granted, two weeks of short-term medical leave, based on Anderson's then-recently-diagnosed diverticulitis. Anderson describes that condition as "occurring when small pouches bulge outward through weak spots in the colon" and "become infected or inflamed." Anderson never submitted any Family and Medical Leave Act (FMLA) forms relating to this leave.

In 2004, Anderson's supervisor left his position as "Quality Product Advisor." Avon hired Defendant Emilio Shao, who is of Asian descent, to fill that position. Avon did not consider promoting Anderson.

On June 2, 2005, Anderson called one of his supervisors, Katrika Shaw, to request a personal day off work from Avon. Anderson was scheduled to work a shift that began later that day and ended the following morning. Shaw denied his request because another worker had received approval for a sick day on that date, and Avon needed coverage in the lab. Anderson then told Shaw he needed to take a sick day because he had a medical condition that was covered under the FMLA. Shaw called Defendant Chuck Gutzwiller, an Avon department manager, as well as Shao and Avon's medical group, who confirmed that Anderson did not have any remaining sick time, and had not filled out any FMLA paperwork. Shao then called Anderson, and told him that, unless he brought in a doctor's note, the absence would result in an attendance "occurrence." Anderson had already incurred several such violations, and believed that another one would result in his termination. Anderson told Shao that his condition was "serious" and "f[ell] under the emergency part of the Medical Leave Act." He told Shao that he would come to work that day, but he asserted, "This is illegal and you can't do this." Anderson also left a voicemail for Shaw in which he stated that Avon was violating the FMLA because he had "mentioned his disability before." Anderson worked his shift that night, and then submitted a doctor's note to Avon the following day stating that he had been "under a doctor's care" on June 2 and 3. Anderson did not receive an attendance violation, or face any other discipline.

On November 24, 2005, Anderson confronted an African-American co-worker, Darius Robinson, apparently because he had heard that Robinson had told other Avon workers about his medical condition. When Robinson told him to return to his work area, Anderson refused and told Robinson to "bring it on[,]" and that he was going to "put his foot up his ass." Other workers restrained Anderson to prevent a physical altercation.

Gutzwiller investigated the incident and suspended Anderson and Robinson. Gutzwiller reviewed witness statements that indicated Anderson "was the primary aggressor" and "initiated the confrontation." He also reviewed Anderson's performance evaluations, including one that indicated Anderson did "not meet performance requirements" for "interpersonal skills/teamwork" because he "tends to point out other's [sic] failures[,] which creates animosity." Anderson had also been involved in several other altercations with his coworkers, including one in which he "made numerous rude, critical, untrue and irrelevant criticisms of his co-workers[ and] supervisor[s]."

On December 2, 2005, Gutzwiller recommended that Anderson be terminated for violating Avon's "Workplace Violence and Professional Conduct in the Workplace" policies. On December 6, Avon terminated Anderson's employment. Avon did not terminate Robinson.

At some point between November 24 and December 6—during his suspension—Anderson requested FMLA-certification forms from Avon relating to a surgery he was scheduled to have in February 2006. Anderson never submitted those forms to Avon. On January 13, 2006, after Anderson had been terminated, Avon sent Anderson an "FMLA Denial Letter," in which it informed

Anderson that his request for leave had been denied because he had failed to return the completed forms.

B.

Anderson thereafter filed a discrimination and retaliatory-discharge complaint against Avon with the Equal Employment Opportunity Commission (EEOC). After the EEOC rejected that complaint, Anderson filed suit against Avon, Gutzwiller, and Shao, alleging that they had interfered with his FMLA rights, discriminated against him in violation of the Americans with Disabilities Act (ADA) and Ohio law, retaliated against him for exercising his FMLA and ADA rights, engaged in "reverse race discrimination" by failing to consider him for a promotion and by firing him, and wrongfully discharged him in violation of Ohio public policy. The district court granted summary judgment to the defendants on each claim.

This appeal followed.

II.

A.

We review *de novo* the district court's grant of summary judgment. *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

B.

Anderson first argues that Avon interfered with his FMLA rights. "The FMLA entitles qualifying employees to twelve weeks of unpaid leave each year if, among other things, an employee has 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Cavin*, 346 F.3d at 719 (quoting 29 U.S.C. § 2612(a)(1)(D)). It is unlawful "for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA-interference claim, a plaintiff must prove that (1) he is an eligible employee; (2) the defendant is an FMLA employer; (3) the employee was entitled to FMLA leave; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. *Cavin*, 346 F.3d at 719.

Here, Anderson was not an FMLA-eligible employee when he requested medical leave in January 2003 because he had not worked for Avon for at least twelve months. 29 U.S.C. § 2611(2)(A)(i); *see Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 551 (6th Cir. 2006). Nor was he eligible in February 2006, because he had been terminated by Avon and was no longer its employee. *Id.* His claims based on those incidents are therefore meritless.

Anderson was an eligible employee in June 2005, when he requested a sick day for a diverticulitis episode, and Avon was an FMLA employer. And, at this stage at least, Anderson has produced sufficient evidence that he was entitled to FMLA leave, and that he provided notice to Avon of his intention to take such leave. The problem with Anderson's claim is that Avon *did not*

*deny his request for FMLA leave.* He argues that Shao did so by denying his request for a sick day and telling him that he would incur an attendance "occurrence" if he did not come to work. But Shao's statement, according to Anderson, came with the qualification that he would receive a violation *only if he did not produce a doctor's note explaining his absence.* That statement's logical implication is that Anderson would *not* incur a violation if he *did* produce a doctor's note. Shao's response, though not ideal, was at least understandable; Anderson had not submitted any FMLA paperwork to Avon, so Shao was left to guess whether Anderson's request was due to a "serious health condition" under the FMLA, or simply a request for a sick day that Anderson did not have. 29 U.S.C. § 2612(a)(1)(D). Shao's request for a doctor's note was within an employer's right "to determine whether [the] absence [was] potentially FMLA-qualifying." 29 C.F.R. § 825.303(b). Ultimately, Anderson decided to work his shift—and he also obtained a doctor's note the following day—so he obviously did not incur an attendance violation. Anderson's FMLA-interference claim is therefore based on his fear that Avon *might have* disciplined him had he taken the leave. But that fear, as explained above, was unfounded, given Shao's statement.

We note that Anderson could have avoided all of this confusion simply by submitting FMLA certification forms to Avon. He had been diagnosed with diverticulitis over two years before this incident, and knew that his condition could occasionally force him to miss work. Had he filled out those forms, Avon would have had an official record of his condition, and likely would have readily granted his request for leave. At any rate, however, Avon did not "interfere with, restrain, or deny

the existence of or attempt to exercise any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).

Summary judgment was therefore appropriate.

## C.

Anderson next argues that Avon discriminated against him because of his disability, in violation of the ADA and Ohio law. To establish a prima facie case of disability discrimination, a plaintiff must show, of course, that he is "disabled." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). "Disabled" in this context means having "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual[.]" 42 U.S.C. § 12102(1)(A). The plaintiff bears the burden of proving that he is disabled. *Monette*, 90 F.3d at 1186.

Here, Anderson has produced evidence that he suffers from diverticulitis, but he has not identified, in either his complaint or his briefs, any major life activity that his condition substantially limits. "It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protection to prove a disability by offering evidence that the extent of the limitation . . . is substantial." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002) (internal quotation marks and citation omitted). Anderson has produced no such evidence, and therefore has failed to meet his burden of establishing that he is disabled under either the ADA or Ohio law. *Id.*

D.

Anderson also argues that Avon fired him in retaliation for exercising his FMLA and ADA rights. To establish retaliation claims, Anderson must show, among other things, a causal connection between the protected FMLA or ADA activity and the adverse employment action. *See Killian v. Yorozo Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (FMLA retaliation); *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (ADA retaliation).

Anderson has not produced any evidence of such a causal connection. He requested leave in June 2005. Avon terminated him over six months later, in December, immediately following a confrontation he instigated with a coworker. Anderson has produced no evidence that his exercise of FMLA or ADA rights contributed to his termination.

E.

Anderson also argues that he was the victim of "reverse race discrimination," in violation of 42 U.S.C. §§ 1981 and 2000e-2(a), when Avon failed to promote him in 2004 and fired him in 2005. To establish a prima facie case of race discrimination, a plaintiff generally must initially show that he is a member of a racial minority. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). Where a non-minority plaintiff alleges "reverse discrimination," as Anderson does here, that requirement "is adapted to require the plaintiff to prove background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* (internal quotation marks and alterations omitted). "[T]he plaintiff bears the burden of

demonstrating that he was intentionally discriminated against despite his majority status." *Id.* (internal quotation marks omitted).

Anderson has completely failed to meet that burden here. He has produced no evidence that his race played *any* role in Avon's decision not to promote him or to fire him.

### F.

Only Anderson's state-law claim for "wrongful discharge in violation of Ohio public policy" remains. But that claim is "contingent upon the success of his [FMLA and ADA] claim[s]," *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 375 (6th Cir. 1999); *see* Complaint ¶ 35; so it, too, must fail.

The district court's judgment is affirmed.