Virgil "Blake" MANNS,
et al., Plaintiff,

v.

ARVINMERITOR, INC., Defendant.

No. 3:02–CV–7430.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 5, 2003.

---

John R. Folkerth, Jr., Folkerth & Folkerth, Dayton, OH, for Plaintiffs.

Charles C. Warner, Porter, Wright, Morris & Arthur, Columbus, OH, for Defendant.

### ORDER

CARR, District Judge.

This cases arises under the Family Medical Leave Act ("FMLA") and the disability discrimination provision of the Ohio Civil Rights Act. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332. Pending is Defendant ArvinMeritor's motion for summary judgment. For the reasons that follow, the motion will be granted.

### BACKGROUND

Plaintiff Virgil "Blake" Manns began working for defendant ArvinMeritor Inc.'s predecessor, Rockwell International Corp., in 1993. In 1998, Plaintiff was diagnosed with narcolepsy, which is a sleeping disorder that causes frequent brief episodes of sleep during the day and disturbed nocturnal sleep. His doctor certified that he would need to take time off intermittently, though his condition was being treated (and, apparently, largely controlled, according to plaintiff's statements to his doctor) with medication. His doctor later clarified that by intermittently, he meant a day or so a month.

The FMLA allows employees covered by its provisions to be granted leave for up to twelve weeks within a twelve month period. Plaintiff took twelve weeks of FMLA leave for the twelve month period from April 1999 to April 2000. His second year of approved FMLA leave, which is at issue in this lawsuit, began in April, 2000.

Plaintiff did not comply with requests to provide verification in a timely manner, or to notify the human resources department in advance when he would not be coming into work. Originally, the company tried to use its progressive discipline process to correct this, but plaintiff threatened to complain to the Department of Labor or to sue the company. The company did not persist in its request that he provide verification and prior notice, and reversed the discipline it had tried to give him. The defendant simply credited the plaintiff with FMLA leave whenever he did not come to work, absent plaintiff's indication that it should do otherwise.

Plaintiff's absences occurred with increasing frequency. As time passed, plaintiff developed a distinct pattern of not coming to work during the normal workweek, and then signing up for and working

on the weekends, when he would get time and a half or double time.

As noted above, plaintiff's latest FMLA leave year began on April 20, 2000. In the four and a half months that followed, plaintiff accumulated his full twelve weeks of FMLA leave. As of September 1, 2000, defendant had credited plaintiff with sixty-three days of FMLA (three days more than the statute allows). Defendant then notified plaintiff that he was terminated.

According to the plaintiff, he was also subjected to harassment from the company's human resource officer and some of his coworkers. This alleged harassment attributed to the human resource official amounted to requests for verification and prior notice of absences, and questions about the validity of his need to be off work. Plaintiff claims these instances constitute retaliation within the meaning of the FMLA.

Plaintiff claims that he should only have been charged with fifty-seven and a half days of FMLA leave. In support of this claim, plaintiff has filed an affidavit with his own personal calendar pages attached, showing which days he counted as FMLA days.[1]

Plaintiff's calendar differs from defendants as to the following days: July 25, July 30, August 10, August 15, August 21, August 22, August 23. Defendant credited plaintiff with FMLA leave for those days; plaintiff's calendar does not indicate that those days were FMLA leave days. Plaintiff claims, in conclusory fashion, that defendant must have failed to excuse those days for Plaintiff's doctors' appointments.

The company, having concluded that plaintiff had exceeded his FMLA leave limits, discharged plaintiff for excessive absenteeism. Plaintiff grieved the discharge through his union. The arbitrator ultimately found, although the company should have persisted in its efforts to force plaintiff to be more accountable for informing the company of his absences, and should have given him a more stern warning prior to termination, that plaintiff was not entitled to reinstatement, back pay, or attorneys' fees/costs.

Plaintiff also filed a charge with the Ohio Civil Rights Commission ("OCRC"), dually filed with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination. Plaintiff's claim was found meritless at every stage of those proceedings, and ultimately was dismissed by the EEOC, which adopted the findings of the OCRC.

Plaintiff, unsatisfied with the arbitrator's and the OCRC/EEOC's rejections of his claims, brought the instant lawsuit. He alleges four causes of action: 1) FMLA violations; 2) disability discrimination in violation of the Ohio Civil Rights Act; 3) termination in violation of Ohio public policy; and 4) loss of consortium (brought by his wife, Mrs. Danielle Manns). Defendant seeks summary judgment on all four claims.

### STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for

---

1. Plaintiff filed, after briefing on the motion was complete, a motion for leave to file an affidavit, attached to which are his personal calendar pages through the end of August, 2000. That motion (Doc. 35) will be granted.

its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

### I. FMLA Claims

Plaintiff alleges that defendant terminated plaintiff's employment in violation of the FMLA, and retaliated against plaintiff or interfered with his exercise of his FMLA rights by harassing him. Defendant seeks summary judgment on these claims, arguing that plaintiff cannot establish a prima facie violation of the FMLA.

The FMLA permits an eligible employee[2] to take up to twelve weeks of leave from employment during a twelve month period, inter alia, to care for a serious health condition afflicting either a family member or the employee himself. 29 U.S.C. § 2601, *et seq.* The employee is permitted to take this leave intermittently, if medically necessary. *Id.* § 2612(b)(1). Employers may not interfere with, restrain, or deny an employee's exercise of his rights under the FMLA. *Id.* § 2615.[3] Such employer behavior will subject it to civil liability under the act. *Id.* § 2617.

When the employee cannot foresee the need for leave at a particular time, he must notify his employer of the need for FMLA leave "as soon as practicable," and usually "within no more than one or two working days of learning of the need for leave." 29 C.F.R. § 825.303(a). While the employee need not specifically invoke

---

**2.** Defendant does not challenge plaintiff's eligibility for FMLA leave.

**3.** That section provides, in relevant part:

(a) Interference with rights
(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
29 U.S.C. § 2615(a).

the FMLA to satisfy the notice requirement, *see* 29 C.F.R. § 825.303(b), once the employer is on notice of the need for leave, the employer has the duty to determine whether the leave was sought under the FMLA and to obtain additional information necessary to confirm that the leave complies with the FMLA. *See George v. Associated Stationers,* 932 F.Supp. 1012, 1016 (N.D.Ohio 1996). The employer must seek this additional information from the employee himself. *Id.; see also* 29 C.F.R. §§ 825.202 & 825.305(c).

▮▮▮▮ Twelve weeks is both the minimum and the maximum amount of leave to which the employee is entitled under the FMLA. *See, e.g., Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 96, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (affirming principle that FMLA statute does not require employers to give more than twelve weeks of FMLA leave; striking down regulation which would require more leave if employer failed to designate leave taken as FMLA leave). Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA. *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 784–85 (6th Cir. 1998) (because plaintiff could have been terminated on date her FMLA leave expired without running afoul of FMLA, employer's decision to terminate her three weeks after expiration date did not violate FMLA)

Plaintiff argues that the defendant failed to give him the requisite twelve weeks of leave in the twelve month period beginning April 20, 2001, and terminated him prior to his full twelve weeks/sixty days worth of FMLA leave. To make this argument,

plaintiff attempts to challenge the employer's calculation of his FMLA leave days. The Court has determined that the specific days at issue are July 25, July 30, August 10, August 15, August 21, August 22, August 23.[4] Plaintiff's conclusory contention regarding the alleged miscalculation does not raise a genuine issue of material fact as to an actual violation of the FMLA. Plaintiff has failed to point to any evidence in the record whatsoever to show that plaintiff ever gave defendant any doctors' slips for the days at issue, or otherwise notified defendant not to credit those days as FMLA leave. Having failed to comply with human resource's requests for orderly verification and notice, plaintiff cannot challenge the company's records to try to show that he was credited with too many days of FMLA leave, especially in light of his failure to let the company know when, if ever, he would be coming back to work in late August/early September.

▮▮▮▮ The difficulty with plaintiff's position in this case is that no matter how one looks at the FMLA calculations, plaintiff's termination was not unlawful under the FMLA. If defendant's calculation of sixty-three days of FMLA leave between April 20 and September 1 is correct (and plaintiff has failed to point to any evidence in the record to establish a genuine issue of material fact on this issue), then plaintiff's three extra days of leave subsequent to his FMLA-protected leave, were not protected by the FMLA and cannot support a finding that his termination was violative of the FMLA. Second, even assuming defendant's calculation of sixty-three days of FMLA leave is incorrect, and assuming plaintiff's calculation of fifty-seven and a half days of FMLA leave is correct, then there were at least seven

---

**4.** These days were arrived at by comparing defendant's list of plaintiff's absences (Doc. 16, Exh. R.) and plaintiff's personal calendar listing his FMLA leave days (Doc 35, Exh. 1).

days (July 25, July 30, August 10, August 15, August 21, August 22, August 23) for which plaintiff had unexcused absences, as there is no evidence in the record to establish that defendant was ever presented with any official excuses for those days. Having accumulated seven unexcused—and according to plaintiff, non-FMLA protected—absences, plaintiff's termination for excessive absenteeism is not only reasonable, but entirely outside of the FMLA's reach.[5]

Plaintiff also claims that he was subject to retaliation or interference, in the form of harassment, for having exercised his rights under the FMLA. The FMLA protects employees from such interference with his rights under the Act. 29 U.S.C. § 2615(a)(2) ("unlawful for any employer . . . in any other manner [to] discriminate against any individual" for exercise of FMLA rights).

■■■ To establish a retaliation claim, the plaintiff must show: 1) he availed himself of a protected right under the FMLA; 2) he was adversely affected by an employment decision; and 3) there was a causal

connection between the two actions. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir.2001). To establish an interference claim, the plaintiff must show: 1) he was entitled to leave under the FMLA; 2) he gave notice of his intention to take FMLA leave; and 3) the employer denied FMLA leave/benefits to which plaintiff was entitled. *See, e.g., Cavin v. Honda of Amer. Mfg. Inc.,* 346 F.3d 713 (6th Cir.2003).[6]

According to the plaintiff, the harm he suffered was being harassed by the company's human resource officer and coworkers. This alleged harassment attributed to the human resource official amounted to requests for verification and prior notice of absences, and questions about the validity of the need to be off work.

■■■ Such questions and requests for verification cannot, as a matter of law, constitute an adverse or retaliatory employment action. As noted above, an employer can make reasonable requests for leave verification and notice (even for a single day)—it need not simply accept an employee's say-so that he needs and has

---

**5.** Furthermore, even if defendant's calculations are wrong, defendant's termination of plaintiff's employment based on an honest but incorrect belief that plaintiff had depleted his FMLA leave days should not subject defendant to liability. *Cf. Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir.2001) ("[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."); *Pesterfield v. Tennessee Valley Auth.,* 941 F.2d 437, 443 (6th Cir.1991).

**6.** In *Cavin,* the Sixth Circuit reversed the district court's grant of summary judgment to the employer (Honda) on the basis that the employee's FMLA-protected absences could not be counted against him as absences under the company's leave policy. While *Cavin* may

seem, at first glance, to be factually analogous to the instant case, it is in fact distinguishable.

In *Cavin,* the plaintiff was discharged after accumulating absences in violation of Honda's leave policy. At least one of the absences on which his discharge was premised was protected under the FMLA, but was disallowed by Honda because Mr. Cavin failed to adhere to Honda's three-day reporting requirement for all absences.

Here, however, plaintiff concedes that ArvinMeritor credited him with FMLA leave for each and every day he was entitled to FMLA leave. Plaintiff is not contending that the defendant failed to credit him with FMLA leave on any of his absences on which his termination is premised. Therefore, this case is factually distinguishable, and *Cavin* does not dictate the result in this case, but simply provides the legal principles for FMLA claims.

taken FMLA leave on a particular date. 29 C.F.R. § 825.305(c); *see Gulan v. Federal Reserve Bank,* 8 Wage & Hour Cas.2d (BNA) 1701, 2003 WL 22047802, *5 (N.D.Ohio, Aug.27, 2003) (plaintiff required to supply certification for specific date at issue); *see also Pagan v. United States Postal Serv.,* 1999 WL 1211915, *2 (Fed. Cir., Dec.15, 1999) (even if an employee provides sufficient documentation to show a need for leave on intermittent basis, employee still must show need for leave on specific date). Indeed, it is the employer's *duty* to investigate and verify that leave is or is not FMLA-qualifying. 29 C.F.R. §§ 825.303 & 825.305(c); *see also, e.g., Henegar v. Daimler–Chrysler Corp.,* 280 F.Supp.2d 680, 688–89 (E.D.Mich.2003) ("An employer has every right to investigate and determine whether an employee is actually suffering from a serious health condition.").

■ Second, plaintiff cannot maintain an interference claim because he cannot show that defendant did not provide him the FMLA leave/benefits to which he was entitled. In fact, plaintiff's argument is exactly the opposite—plaintiff wishes this Court to find defendant liable under the FMLA for giving plaintiff *more* FMLA leave/benefits than he was entitled. This the Court will not do.

■ The plaintiff also appears to contend that his termination, even if he had exhausted his FMLA leave, was in retaliation for his having done so. The record does not support this claim. Construing the record in plaintiff's favor, the most that could be said is that the company's motives may have been mixed, and that the disruption created by the plaintiff's usually unannounced and often protracted absences, most of which were credited to him as FMLA leave, may have played a role in the desire to find a legitimate reason for terminating him.[7] But the fact remains that the plaintiff has not shown a genuine issue of material fact regarding the company's records of his FMLA leave. Once the company concluded, on the basis of its records, that plaintiff had exceeded his FMLA leave, it could discharge him for absenteeism.

In summary, I find that defendant's motion for summary judgment should be granted on the FMLA claim.

## II. Disability Discrimination Claim under Ohio Civil Rights Act

Plaintiff claims the defendant discriminated against him based on his narcolepsy, in violation of the Ohio Civil Rights Act, when it terminated his employment. Defendant seeks summary judgment on this claim, arguing that plaintiff has not established a prima facie case of disability discrimination.

Under Ohio law, it is unlawful "for any employer, because of the . . . handicap, . . .

---

7. The undisputed evidence shows that plaintiff's absences had a definite impact on the manufacturing operations. Plaintiff's fellow employees began complaining about the disruption caused by plaintiff's absences (if his position on the line went unfilled on a particular day, that would either slow down or halt production down the line, to the extent other employees could be sent home), as well as plaintiff's own lack of productivity when he did show for work. These employees regularly confronted management about the problems it was causing them in terms of getting their own work done. This situation degenerated to the extent that management finally hired a full-time employee (at a cost of $60,000 per year) to work plaintiff's position on the days he was absent, who would then have to be reassigned on days when plaintiff showed. Eventually meeting production demands became such a problem that one of the defendant's largest customers began complaining that the defendant was not producing enough axles to satisfy the customer's needs/orders.

of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." O.R.C. § 4112.02(A). The Ohio Supreme Court has urged courts to look to the Americans with Disabilities Act ("ADA") [8] for guidance in interpreting Ohio's prohibition on disability discrimination. *See City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998) ("The Americans with Disabilities Act ('ADA') is similar to the Ohio handicap discrimination law. ... We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.").

■ To establish a prima facie case of disability discrimination under Ohio law, the plaintiff must demonstrate "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *City of Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 571, 697 N.E.2d 204 (1998) (citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 281, 496 N.E.2d 478 (1986)).

■ If a plaintiff can establish a prima facie case, the burden shifts to the defendant to establish "some legitimate, nondiscriminatory reason" for terminating the plaintiff. *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 302, 658 N.E.2d 738 (1996) (citing *Plumbers & Steamfitters*

*Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 197, 421 N.E.2d 128 (1981)). If the defendant offers evidence of a nondiscriminatory reason for terminating the plaintiff, the burden of production would shift back to the plaintiff to present evidence that the defendant's proffered reason was a pretext for impermissible discrimination. *Hood*, 74 Ohio St.3d at 302, 658 N.E.2d 738 (citing *Plumbers & Steamfitters*, 66 Ohio St.2d at 198, 421 N.E.2d 128).

■ Plaintiff has failed to establish a prime facie case of disability discrimination, because he has failed to show that he was disabled. There is no information in the record which would show that plaintiff is or was disabled. While he may have suffered from a serious health condition as defined by the FMLA, such a condition is not synonymous with being disabled.

With regard to the disability element, plaintiff contends that defendant perceived him to be disabled, apparently because the company continued to honor his requests for FMLA leave. This is not so—there is no evidence that the company believed him to be impaired with regard to a substantial life activity. Indeed, defendant's skepticism about plaintiff's conduct (evidenced by Ms. Farrington's questions to plaintiff) suggests that it did not believe that he really needed the leave—much less that it perceived him as disabled.

■ Even assuming that plaintiff could establish a prima facie case of disability discrimination, defendant has proffered a legitimate, non-discriminatory reason for plaintiff's termination. That reason was plaintiff's unexcused absences, and the dis-

---

**8.** Title I of the ADA provides, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advance-

ment, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

ruption those absences caused in the workplace. Plaintiff has failed to rebut this explanation, much less shown that it is pretextual.

Thus, plaintiff's claim for disability discrimination under the Ohio Civil Rights Act must fail.

### III. Violation of Public Policy

Count III of the complaint alleges a cause of action for violation of Ohio public policy. Plaintiff's opposition to defendant's motion for summary judgment specifically states "Mr. and Mrs. Manns do not oppose [defendant's] motion insofar as [defendant] is seeking summary judgment on the public policy and loss of consortium causes of action only." (Doc. 33, at 18 n. 7.) Therefore, defendant's motion for summary judgment will be granted as to this public policy cause of action.

### IV. Mrs. Manns' Loss of Consortium Claim

Count IV of the complaint alleges a cause of action on behalf of Mrs. Manns for loss of consortium. Plaintiff's opposition to defendant's summary judgment motion specifically states "Mr. and Mrs. Manns do not oppose [defendant's] motion insofar as [defendant] is seeking summary judgment on the public policy and loss of consortium causes of action only." (Doc. 33, at 18 n. 7.) Therefore, defendant's motion for summary judgment will be granted as to this loss of consortium cause of action.

### *CONCLUSION*

In light of the foregoing, it is

ORDERED THAT

1) Plaintiff's motion for leave to file his affidavit be, and hereby is granted,

2) Defendant ArvinMeritor's motion for summary judgment be, and hereby is granted.

So ordered.