OPINION
{¶ 1} Plaintiff-appellant Carol Hershberger appeals the May 18, 2006 Judgment Entry entered by the Stark County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees Altercare, Inc., and Louisville Center for Rehabilitation and Nursing Care, Inc. (together "appellees"; individually "Altercare" and "Louisville Center").
 STATEMENT OF THE FACTS AND CASE {¶ 2} In October, 2002, Hershberger, at age 57, commenced employment with Louisville Center as the director of marketing/admissions. The marketing and admissions director is responsible for marketing the facility and completing the admission paperwork for individuals moving into Louisville Center. Hershberger reported directly to Roy Wright, the administrator and highest level manager at Louisville Center, who became her supervisor in January, 2003. Hershberger was also directly accountable to Cathleen McNamera and ultimately accountable to Rick Vanderhoof, the regional vice president of Altercare of Ohio. Altercare of Ohio provides Louisville Center and other affiliated nursing homes with human resources and management services.
 {¶ 3} Each year the employees of Louisville Center received an employment handbook which set forth the policies pertaining to at-will employment, equal opportunity employment, disabilities, and leaves of absence. The leave policy at the time of Hershberger's employment provided medical leave totaling twelve weeks per rolling year, either the twelve week Family and Medical Leave Act entitlement or a comparable twelve weeks for employees not eligible for FMLA leave. The policy expressly provided, *Page 3 
"Once the 12 week entitlement is exhausted, the employment relationship is terminated, and the employee may reapply for employment if and when she is able to return to work."
 {¶ 4} During her tenure at Louisville Center, Roy Wright gave Hershberger positive performance reviews. Wright hoped the reviews would motivate Hershberger to address performance issues which concerned upper management. Wright also repeatedly counseled Hershberger regarding her attendance and punctuality. One area which particularly concerned upper management was Hershberger's census building efforts. The census at Louisville Center remained flat during Hershberger's employment. Although Rick Vanderhoof communicated management's concerns about the census to Hershberger, she was unwilling to take responsibility and cast blame on clinical issues in the building. Vanderhoof knew Hershberger was making excuses for the poor census numbers because Louisville Center had positive clinical outcomes and customer satisfaction surveys, which contradicted Hershberger's assertions. In late 2004, Louisville Center began major building renovations, which, when completed, would create 44 additional beds for the facility. Prior to the renovations, the facility had 100 beds. Vanderhoof questioned whether Hershberger was the best individual to move the census forward after the renovations.
 {¶ 5} During Hershberger's employment, Wright allowed patients who wanted to have private rooms to stay alone in double occupancy rooms at an additional daily rate. According to Rebecca Truex, the office manger at Louisville Center, Wright's decision resulted in a number of beds being unavailable while Hershberger held her position. *Page 4 
The construction at the facility resulted in an additional number of beds being unavailable.
 {¶ 6} In late March, 2004, Hershberger underwent non-elective surgery. Hershberger took 8 weeks of FMLA leave. In an August 4, 2004 counseling memorandum, Wright stated:
 {¶ 7} "Your dedication and loyalty to the facility in the past has been appreciated. However, your frequent and sometimes long absences in the past year have created stress on other staff and also limited our marketing outreach. In order to maintain/increase our census, it is essential we have continued, focused marketing efforts. Certainly there were times you needed to be off.
 {¶ 8} "Although some of your absences have been scheduled, there have been numerous times where you have taken off with little or no notice.
 {¶ 9} "* * *
 {¶ 10} "You were scheduled to be the Weekend Manager for the July 24, 25 Weekend. However, you did not work the Weekend Mgr. position or arrange for someone to cover for you.
 {¶ 11} "Like you, I feel personal/family issues are important and need measured attention, but the 65 residents of this facility also require our attention and, in God's eyes, are just as important as our family members. It is not right to neglect our nursing home residents any more than it is to neglect our family members.
 {¶ 12} "There needs to be improvement in your attendance and unscheduled call offs during the next 6 months (August 2004 — January 2005). The goal will be to have no more than 4 unscheduled call offs in the following 6 months. The goal will also be to *Page 5 
not switch scheduled duties more than one time in a 2 months period. I would also like to see you consistently on time for work when you are working at the facility — 9am is your starting time. Please make every effort to schedule appointments during non-working hours. * * *"
 {¶ 13} August 4, 2004 Counseling Memorandum.
 {¶ 14} Wright's first performance review of Hershberger following her return rated her as not meeting standards for attendance. Additionally, Wright made several comments, which disturbed Hershberger. Wright asked her, "Are you sure you're done doctoring right now? Do you think you can be healthy enough to stay at work?" Several times, Wright remarked, "It's nobody's fault if you're getting older and your body is falling apart."
 {¶ 15} Due to complications arising from the 2004 surgery, Hershberger's physician required her to undergo another surgery, which was scheduled for April 5, 2005. Hershberger anticipated being out of work 6 to 8 weeks. She contacted Diane Geis, vice president of human resources at Altercare of Ohio, to tell Geis she needed time off and wanted to know how much FMLA leave she had remaining. After verifying the information with the benefits coordinator, Geis informed Hershberger she had 4 weeks remaining.
 {¶ 16} Hershberger asked Geis what the ramifications would be for taking more than the 4 weeks. Geis responded she could not guarantee Hershberger's job would remain open, and advised Hershberger to talk to the Administrator of Louisville Center, Roy Wright. Rather than address the issue with Wright, Hershberger spoke with Lisa Crumley, the human resources generalist at Louisville Center, and asked Crumley what *Page 6 
would happen if Wright did not approve additional leave. Crumley advised Hershberger she had never seen Wright disapprove additional leave. Hershberger assumed Wright would extend her leave. In a letter dated March 25, 2005, Denise Downard, the benefits coordinator, informed Hershberger she had 4 weeks of FMLA leave remaining, and noted, if she exceeded the leave, Louisville Center "cannot guarantee your eligibility to return to work or that your position will be available upon your requested return date." Before Hershberger commenced her leave, Wright received an email from the corporate office directing him to notify the office in 4 weeks if Hershberger remained on leave.
 {¶ 17} On Hershberger's last day before her leave, Wright commented to Hershberger's co-workers, "This is Carol's last day, she's going to have surgery what do you think, eight weeks?" Wright also remarked to Hershberger, "Think how nice it's going to be when you come back and the facility's all under roof."
 {¶ 18} Prior to her surgery, Hershberger spoke with Wright regarding a vacation she had planned for June. Hershberger recalled the conversation:
 {¶ 19} "Q. Okay. We talked about — when was the first of these conversations you're talking about where you say he led you to believe you were coming back when did that start?
 {¶ 20} "A. Okay. First of all, I had a family vacation planned for the end of June * * * they had a policy we had to use all paid days off PTO, vacation whatever, before you started FMLA.
 {¶ 21} "* * *
 {¶ 22} "I said, `Roy, now remember I'm going to take a family vacation. It's already planned for the 30th of June.' And I said, `you know, I don't want to go and then *Page 7 
I come back and you tell me you have a problem with it and I can't go.' He said, well, here — he said, `If you come back in May,' you know, `like we planned, then it's no problem. I'll even work with you and you can use some of your overtime hours and you can trade weekends with people.' Because I would have had no vacation time. So he was going to let me earn some vacation time to take."
 {¶ 23} Hershberger Deposition at 158-159.
 {¶ 24} Wright contacted the corporate office, seeking direction after the 4 weeks expired. Greg Colaner, president of Altercare of Ohio, explained the company procedure was to terminate an employer who had exhausted his/her 12 weeks of FMLA leave. With Colaner's approval, Wright was directed to terminate Hershberger's employment. Wright informed Hershberger of her termination via letter dated May 3, 2005, and via telephone conversation on May 4, 2005.
 {¶ 25} Hershberger subsequently requested Wright reinstate her. Wright instructed her to submit a letter outlining the reasons she should be reinstated. Hershberger submitted her letter to Wright on May 8, 2005. Although Wright told Hershberger he would call her for an interview, he never did. Hershberger was never interviewed for the position. The Marketing/Admissions Director position remained vacant for two months following Hershberger's termination. Louisville Center subsequently hired Julie Clapper, who was 50 years old.
 {¶ 26} On October 13, 2005, Hershberger filed a Complaint naming Louisville Center and Altercare as defendants, and asserting claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; age and disability discrimination under R.C. 4112.99; and promissory estoppel. Following discovery, Louisville Center and *Page 8 
Altercare filed a motion for summary judgment. Hershberger filed a memorandum in opposition with supporting depositions. Louisville Center and Altercare filed a reply brief. Via Judgment Entry filed May 18, 2006, the trial court granted Louisville Center and Altercare's motion for summary in toto.
 {¶ 27} It is from this judgment entry Hershberger appeals, raising the following assignments of error:
 {¶ 28} "I. THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT'S CLAIM FOR INTERFERENCE UNDER THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601 ET SEQ.
 {¶ 29} "II. THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT'S CLAIMS FOR EQUITABLE ESTOPPEL UNDER THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601 ET SEQ. AND PROMISSORY ESTOPPEL.
 {¶ 30} "III. THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT'S CLAIM FOR DISABILITY DISCRIMINATION UNDER R.C. § 4112.99.
 {¶ 31} "IV. THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT'S CLAIM FOR AGE DISCRIMINATION UNDER R.C. § 4112.99.
 {¶ 32} "V. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS TO APPELLANT'S CLAIMS AGAINST APPELLEE, ALTERCARE, INC." *Page 9 
 Standard of Review {¶ 33} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212.
 {¶ 34} Civ.R. 56(C) states, in pertinent part:
 {¶ 35} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 36} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of *Page 10 
material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264.
 {¶ 37} It is based upon this standard we review Hershberger's assignments of error.
 I {¶ 38} In her first assignment of error, Hershberger contends the trial court erred in granting summary judgment to Louisville Center and Altercare on her claim for interference under the Family and Medical Leave Act.
 {¶ 39} Under the FMLA, a covered employer must provide eligible employees with twelve weeks of unpaid leave per year due to a serious health condition. 29 U.S.C. 2612(a)(1). Twelve weeks is both the minimum and maximum amount of leave to which an employee is entitled under the FMLA. Manns v. ArvinMeritor, Inc. (N.D. Ohio 2003), 291 F Supp 2d 655,660. The statute entitles the employee to reinstatement at the end of the FMLA leave. 29 U.S.C. 2614(a)(1). The Act also makes it unlawful for an employer to "interfere with, restrain, or deny the exercise or attempt to exercise" rights thereunder. 29 U.S.C. 2615.
 {¶ 40} To prevail on an interference claim under 29 U.S.C. 2615(a)(1), an employee must prove his/her employer interfered with his/her FMLA right to medical leave or to reinstatement following FMLA leave.Arban v. West Publ'g Corp. (6th Cir.2003), 345 F.3d 390, 400, 401; See also, Cavin v. Honda of Am. Mfg., Inc. (6th Cir.2003), 346 F.3d 713,719. Accordingly, Hershberger must establish: (1) she was an eligible employee, (2) appellees are a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave appellees notice of her intent to take leave, and (5) *Page 11 
appellees interfered with FMLA rights to which she was entitled.Cavin, 346 F.3d at 719. The parties do not dispute the first four of these elements exist. Their dispute turns on the fifth.
 {¶ 41} With respect to the fifth element of Hershberger's FMLA claim, the trial court found, "Louisville Center did not interfere with [Hershberger's] statutory right to FMLA leave. [Hershberger] was allowed twelve weeks of FMLA leave, the maximum to which she was entitled." May 18, 2006 Judgment Entry at 5.
 {¶ 42} Hershberger explains the trial court failed to address her claim, but for appellees' misrepresentations, she would have postponed her surgery until June, 2005, when her new FMLA year commenced. In support of her position, Hershberger relies upon Fry v. First FidelityBankcorporation (E.D. Pa), 1996 WL 36910, unreported; and Kosakow v. NewRochelle Radiology (2d Cir. 2001), 274 F 3d 706.
 {¶ 43} In Fry, the United States District Court for the Eastern District of Pennsylvania held an employer's failure "to adequately notify its employees of the impact of its own family leave polices on the rights provided by the FMLA, particularly where there is an apparent conflict between the employer's policy and the employee's FMLA rights * * * can constitute interference with an employee's FMLA rights if it causes an employee to unwittingly forfeit the protections of the FMLA." Id. at 5. (Emhasis added.) The Fry Court concluded, "if [the employee] can prove that her employer failed to give appropriate notice of its policies concerning the FMLA * * * she can demonstrate interference with her statutory rights." Id.
 {¶ 44} In Kosakow, the Second Circuit Court of Appeals found "an employer who remains silent when its employee announces that she plans to take medical leave is *Page 12 
effectively misleading that employee into believing she is protected by the FMLA". Id. at 725. Said differently, "[A]n employee can generally assume that she is protected by the FMLA unless informed otherwise." Id. An employer has a legal duty under the FMLA to inform its employees of the conditions they must meet in order to be covered by the FMLA.
 {¶ 45} The evidence in the record reveals no one from Louisville Center or Altercare of Ohio gave Hershberger false or misleading information regarding her FMLA rights, or remained silent when she discussed her leave. Hershberger was advised-both orally and in writing — she only had 4 weeks of FMLA leave remaining. We find the fact Hershberger believed, based upon Wright's comments, she could take additional leave beyond her FMLA entitlement without jeopardizing her job does not constitute interference of her FMLA rights by appellees. Likewise, we find the fact Wright's statements may have influenced her decision regarding when to have the surgery does not establish appellees interfered with Hershberger's rights under the FMLA.
 {¶ 46} Hershberger's first assignment of error is overruled.
 II {¶ 47} In her second assignment of error, Hershberger asserts the trial court erred in granting summary judgment in favor of appellees on her equitable and promissory estoppel claims. We shall address each cause of action in turn.
 {¶ 48} In order to establish a claim of equitable estoppel under the FMLA, an employee must show: (1) the employer made a definite misrepresentation of fact knowing the employee would rely upon it; (2) the employee reasonably relied upon the misrepresentation; and (3) the employee was harmed as a result of his/her reasonable *Page 13 
reliance. Heckler v. Community Health Serv. of Crawford County,Inc. (1984), 467 U.S. 51, 59, 104 S.Ct. 2218, 2223-24.
 {¶ 49} We find Hershberger cannot establish appellees made a definite misrepresentation of fact to her. Geis specifically told Hershberger she only had 4 weeks of FMLA leave remaining. Denise Downard sent Hershberger a written correspondence, informing Hershberger she had 4 weeks of FMLA leave remaining and, if she exceeded that leave, Louisville Center could not guarantee her eligibility to return to work or if her position would be available upon her return. Downard's letter reiterated Louisville Center's policy with respect to FMLA leave.
 {¶ 50} Accordingly we find the trial court properly granted summary judgment in favor of appellees on Hershberger's claim of equitable estoppel under FMLA.
 {¶ 51} We now turn to Hershberger's promissory estoppel claim. The doctrine of promissory estoppel is applicable to at-will employment relationships. Merc. v. Dispatch Printing Co. (1985),19 Ohio St. 3d 100, 105. In order to establish a claim of promissory estoppel, an employee must show: (1) a clear and unambiguous promise; (2) detrimental reliance; (3) the reliance was reasonable and foreseeable; and (4) damages. Apple v. Coffman (May 2, 1996), Fairfield App. No. 95-CA-47, unreported.
 {¶ 52} "A promise is defined in Restatement of the Law 2d, Contracts (1981) 8, Section 2(1), as `* * * a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made'." Stull v. CombustionEngineering, Inc. (1991), 72 Ohio App.3d 553, 557, citing Cohen v.Messina (1985), 24 Ohio App.3d 22, 26. *Page 14 
 {¶ 53} Hershberger's promissory estoppel claim is predicated upon Wright's statement, "If you come back in May, like we planned, then it's no problem." Although the comment was said in response to Hershberger's inquiry regarding a vacation she had planned for the end of June, 2005, we find reasonable minds could conclude Wright's comment was an implicit promise to Hershberger she would retain her position even if she took additional leave. Wright would have no reason to okay the vacation in June if Hershberger was not returning to work after her scheduled surgery, despite fact that her total absence would then exceed the 12 weeks allowed under FMLA. Accordingly, we find the trial court erred in granting summary judgment in favor of appellees on Hershberger's promissory estoppel claim.
 {¶ 54} Hershberger's second assignment of error is overruled in part, and sustained in part.
 III {¶ 55} In her third assignment of error, Hershberger argues the trial court erred in granting summary judgment in favor of appellees on her claim for disability discrimination pursuant to R.C. 4112.99.
 {¶ 56} In order to establish a prima facie case of disability discrimination, an employee must establish he/she is: (1) an individual with a disability; (2) "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; (3) was discharged because of the disability. Little Forest Medical Center v.Ohio Civil Rights Commission (1991), 61 Ohio St. 3d 607, 609.
 {¶ 57} R.C. 4112.01(A)(13) defines a disability as "a physical or mental impairment that substantially limits one or more major life activities, including the *Page 15 
functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."
 {¶ 58} Hershberger maintains appellees "regarded" her as disabled. To prove such assertion, Hershberger must show appellees either mistakenly believed she had an impairment that substantially limited one or more major life activities; or mistakenly believed an actual nonlimiting impairment substantially limited one or more major life activities.Sutton v. United Air Lines, Inc. (1999), 527 U.S. 471, 491,119 S.Ct. 2139, 2150-51. Hershberger claims Wright believed she was substantially limited in a major life activity, working, because of her surgeries. Hershberger specifically refers to Wright's comment, "Are you sure you're done doctoring right now? Do you think you can be healthy enough to stay at work?" as well as Wright's downgrading her performance reviews as evidence appellees regarded her as disabled.
 {¶ 59} We find this evidence does not support Hershberger's assertion appellees regarded her as disabled. Wright was merely commenting on Hershberger's being off work, not about having any specific impairment rendering her unable to work. Wright knew Hershberger needed the two surgeries, and could not return to work until she received approval from her physician.
 {¶ 60} Assuming, arguendo, Hershberger has established appellees regarded her as disabled, she has failed to show appellees took adverse employment action against her due to the disability. Appellees terminated Hershberger because she exceeded her allowable FMLA leave, which was corporate policy.
 {¶ 61} Hershberger's third assignment of error is overruled. *Page 16 
 IV {¶ 62} In her fourth assignment of error, Hershberger contends the trial court erred in granting appellees' motion for summary judgment on her claim for age discrimination. Under Ohio law, a prima facie case of age discrimination may be proved either directly or indirectly. An employee "may establish a prima facie case of age discrimination directly by presenting evidence, of any nature, to show that an employer more likely than not was motivated by discriminatory intent ." Mauzy v.Kelly Services, Inc. (1996), 75 Ohio St.3d 578, paragraph one of the syllabus; Smith v. E.G. Baldwin Assoc, Inc . (1997),119 Ohio App.3d 410, 415. If, however, the employee is unable to establish a causal link or nexus between the employer's discriminatory statements or conduct and the act that allegedly violated the employee's rights under the statute, then the employee has not proved age discrimination by the direct method of proof. See Byrnes v. LCI Communication Holdings Co. (1996),77 Ohio St.3d 125, cert. denied (1997), 521 U.S. 1104, 117 S.Ct. 2480. Without direct proof of discrimination, an employee may establish a prima facie claim of age discrimination indirectly by demonstrating he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. Coryell v. Bank One Trust Co., N.A., 101 Ohio St.3d 175,2004-Ohio-723, at ¶ 20.
 {¶ 63} Once an employee establishes a prima facie case of age discrimination, the burden shifts to the employer to provide some legitimate, nondiscriminatory reason for the action taken.Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, 503. If the employer establishes a nondiscriminatory reason, the employee then bears the burden *Page 17 
of showing the employer's proffered reason was a pretext for impermissible discrimination. Owens v. Boulevard Motel Corp. (Nov. 5, 1998), Franklin App. No. 97APE12-1728; Cruz v. South Dayton UrologicalAssociates, Inc. (1997), 121 Ohio App.3d 655, 659. The employee must prove the employer's nondiscriminatory reason was false and discrimination was the real reason for the action taken. Wagner v.Allied Steel Tractor Co. (1995), 105 Ohio App.3d 611, 617. Mere conjecture the employer's proffered reason is pretext is insufficient to withstand a summary judgment motion. Surry v. Cuyahoga CommunityCollege, 149 Ohio App.3d 528, 2002-Ohio-5356, at ¶ 24. To avoid summary judgment, the plaintiff must produce some evidence the defendant's proffered reasons were factually untrue. Id.
 {¶ 64} While age related comments directed toward the employee may support an inference of age discrimination, isolated, ambiguous, or abstract comments cannot support a finding of age discrimination.Robinson v. Nationwide Mut. Ins. Co. (Dec. 21, 2001), Lake App. No. 2000-L-119; Wilson v. Precision Environmental Co., Cuyahoga App. No. 81932, 2003-Ohio-2873, at ¶ 25.
 {¶ 65} Hershberger's claim for age discrimination rests upon comments made by Roy Wright, to the effect, "It's nobody's fault if you're getting older and your health is bad." Hershberger has presented no evidence to place the alleged remark in the context of any employment decision. "Stray remarks in the workplace, when unrelated to the decision-making process are insufficient to establish a prima facie case of discrimination, even when the statements are made by the decision-maker at issue." Brewer v. Cleveland City Schools Bd. OfEduc. (1997), 122 Ohio App.3d 378, 385. *Page 18 
 {¶ 66} Assuming, arguendo, Hershberger established a prima facie case of age discrimination, appellees propounded a non-discriminatory reason for Hershberger's discharge. Appellees repeatedly told Hershberger she had four weeks of FMLA leave remaining prior to her April, 2005 surgery. Hershberger exhausted her 12 week FMLA entitlement, but did not return to work. In accordance with corporate policy, appellees discharged Hershberger.
 {¶ 67} With respect to appellees' failure to rehire Hershberger after her termination, we likewise find appellees propounded a legitimate, non discriminatory reason for doing so. Although Roy Wright generally had favorable reviews of Hershberger, he had to counsel her regarding her unscheduled call-offs and failure to submit paperwork in a timely manner. Additionally, upper management had concerns about Hershberger's ability to increase the census upon completion of the renovations. Hershberger's termination was not based upon her poor performance. The decision not to rehire her was based upon upper management's dissatisfaction with her census building efforts.
 {¶ 68} We find "the fact that an employee does some things well does not mean that any reason given for his firing is a pretext for discrimination * * * unless he attacks the specific reasons for a given termination, a plaintiff who stresses evidence of satisfactory performance is simply challenging the wisdom of the employer's decision, which we have consistently refused to review." Anderson v. StaufferKemco (7th Circuit 1992), 965 F. 2d 397, 403. We find no genuine issue of material fact as to whether appellees' decisions to terminate Hershberger and not to rehire her were pretextual.
 {¶ 69} Hershberger's fourth assignment of error is overruled. *Page 19 
 V {¶ 70} In her final assignment of error, Hershberger contends the trial court erred in dismissing her claims against Altercare. We disagree.
 {¶ 71} In its May 18, 2006 Judgment Entry the trial court found Altercare had no employment relationship with Hershberger. In her Complaint, Hershberger named Altercare, Inc. as a defendant. Diane Geis, Greg Colaner, and Rick Vanderhoof all testified they worked for Altercare of Ohio, Inc. In interrogatories and depositions, appellees advised Hershberger she had named the wrong party. Hershberger has failed to present any evidence to the contrary.
 {¶ 72} Accordingly, we find the trial court did not err in granting summary judgment to Altercare, Inc. Hershberger's fifth assignment of error is overruled.
 {¶ 73} The judgment of the Stark County Court of common Pleas is affirmed in part; reversed in part and remanded for further proceedings in accordance with our opinion and the law.
 Hoffman, P.J. Farmer, J. and Edwards, J., concur. *Page 20 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of common Pleas is affirmed in part; reversed in part and remanded for further proceedings in accordance with our opinion and the law. Costs assessed to appellant. *Page 1