**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0712n.06

No. 08-2263

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Nov 03, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| PAUL STIMPSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED PARCEL SERVICE, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: MOORE, GIBBONS, and FRIEDMAN,[*] Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff Paul Stimpson appeals from the order of the district court granting summary judgment to United Parcel Service ("UPS") in his suit alleging that UPS illegally terminated him for seeking to exercise his rights under the Family Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.* Stimpson argues that the district court erred by concluding that 1) Stimpson was not a qualified employee within the meaning of the FMLA and 2) Stimpson failed to provide proper notice to his employer before seeking leave. For the reasons that follow, we affirm the judgment of the district court granting UPS summary judgment on the alternative ground that Stimpson did not suffer a serious health condition within the meaning of the Act and therefore was not entitled to FMLA leave.

---

[*]The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

**I.**

At approximately 3:40 p.m. on Saturday, April 29, 2006, a car struck Stimpson as he rode his bicycle in Royal Oak, Michigan. The car's bumper struck the front wheel of Stimpson's bicycle, causing the bicycle and Stimpson to fall onto the road. Police issued the offending motorist a citation for following a pedestrian too closely. Stimpson, whom the police report indicates was intoxicated at the time of collision, refused medical treatment. At 8:30 p.m. that same day, Stimpson presented himself at the emergency room of William Beaumont-Royal Oak Hospital ("Beaumont"). Stimpson complained of moderate pain in his mid- and lower back. The physicians at Beaumont noted contusions on Stimpson's back, legs, and right ankle. They prescribed Stimpson medication for the pain and discharged him from the hospital at 10:35 p.m. Stimpson returned to Beaumont the next day, complaining of mild back pain. The hospital report notes that Stimpson had failed to fill the prescription doctors had given him the night before. Emergency room physicians once again quickly discharged Stimpson after determining that he had no serious injuries.

Stimpson was a part-time employee of UPS. Keith Washington, Stimpson's supervisor, stated that on Saturday evening, April 29, Stimpson called and left a message indicating that a car had struck him while he was on his bicycle.[1] According to Washington, Stimpson did not contact Washington again nor provide him any additional information about his medical condition.

---

[1]Stimpson asserts that the call to Washington instead took place on April 30. If Washington's timeline is correct, then Stimpson called Washington before he ever sought any medical treatment.

Sometime between May 1 and May 4, Stimpson also spoke with Rick Patton, another UPS supervisor. Stimpson asserts that he told Patton on May 1 that he had been struck by a car and would not return to work until he recovered. Patton disputes this and alleges that it was he who called Stimpson on May 4 to inquire why Stimpson had failed to report for work and, upon learning of the reason, requested that Stimpson immediately submit verifying medical documentation. Both Washington and Patton assert that between May 1 and May 12, 2006, Stimpson never called to give prior notice that he would be unable to work for the day, as UPS's internal procedures require.

On May 5, 2006, UPS sent Stimpson a letter at his home address noting that he had failed to provide any medical documentation to support his leave of absence, which had begun on May 1. The letter informed Stimpson that he had seventy-two hours to provide supporting documentation or UPS would terminate his employment. Stimpson submitted no documentation in response to the May 5 letter; and on May 12, 2006, UPS terminated him. Stimpson later explained his failure to respond by claiming that he was staying at a different address during the time after the collision than the one he had given to UPS and that he consequently did not receive the letter until May 22.

On May 23, 2006, Stimpson filed a grievance with Teamsters Local 243 alleging that UPS had discharged him in violation of the labor agreement between UPS and the Teamsters. Stimpson also submitted supporting documentation for his injuries at this time, including the two hospital emergency room reports noting the contusions and mild to moderate pain. Stimpson additionally submitted brief notes from physicians at Beaumont's emergency room and Dr. Brent Herr of the Physician Health Care Network stating that he should not return to work until May 20, 2006. The Teamsters and UPS denied his claim. Stimpson later filed a complaint with the National Labor

3

Relations Board ("NLRB") alleging that UPS had terminated him because of his union activities, which the NLRB denied.

Following the denial of his grievances, Stimpson filed a one-count complaint in the United States District Court for the Eastern District of Michigan on September 5, 2007, alleging that UPS had interfered with his effort to take leave under the FMLA. The district court sanctioned Stimpson's counsel for failing to file his response to UPS's motion for summary judgment until the night before the hearing. Nonetheless, the district court rescheduled the hearing and considered the arguments raised by Stimpson's counsel in full.

In its order granting summary judgment to UPS on Stimpson's claim, the district court found that Stimpson was not an eligible employee within the meaning of the FMLA because he had not worked the required minimum of 1,250 hours within the past twelve months. *Stimpson v. UPS*, No. 07-13869, 2008 U.S. Dist. LEXIS 59154, at *14 (E.D. Mich Aug. 5, 2008). The district court noted that this case was novel because UPS previously had terminated Stimpson's employment on September 26, 1998. UPS reinstated Stimpson on September 26, 2005, after this court enforced the NLRB's order finding that UPS had terminated Stimpson unlawfully because of his union activities. *Id.* at *11-12; *see also UPS v. NLRB*, Nos. 04-1049/1246, 2005 U.S. App. LEXIS 8982, at *20 (6th Cir. May 18, 2005). Thus, Stimpson had only worked for seven months prior to his dismissal. Because Stimpson's 1998 termination was unlawful, the time he would have worked the prior five months could be counted toward the 1,250-hour requirement. *See Ricco v. Potter*, 377 F.3d 599, 600 (6th Cir. 2004). However, the district court determined that even counting this time, Stimpson still fell short of 1,250 hours. *Stimpson*, 2008 U.S. Dist. LEXIS 59154, at *14. As an alternative

4

holding, the district court held that Stimpson had failed to give proper notice of his intent to seek leave. *Id.* at \*15-16. The district court finally noted that Stimpson's medical records did not support a finding that he had suffered a serious health condition. *Id.* at \*16. Stimpson timely appealed the district court's grant of summary judgment.

## II.

Because the district court granted summary judgment in favor of UPS, we review the district court's decision *de novo*. *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 719 (6th Cir. 2003). Federal Rule of Civil Procedure 56(c) instructs that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to require a trial, *id.* at 252; but we will be careful to draw "all justifiable inferences" in the nonmovant's favor. *Id.* at 255.

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R. § 825.220(b) (noting that "[a]ny violations of the Act . . . constitute interfering with . . . the exercise of rights provided by the Act."). Stimpson alleges that UPS interfered with his FMLA rights by refusing to recognize his May 1-12, 2006, absence as FMLA-

qualifying leave. To succeed on such an interference claim, Stimpson must prove that "(1) he is an 'eligible employee,' 29 U.S.C. § 2611(2); (2) the defendant is an 'employer,' 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled." *Cavin*, 346 F.3d at 719 (citation omitted). UPS concedes only that it is an employer within the meaning of the statue and asserts that Stimpson fails every other prong of the interference test. We address each prong of the test in turn.

**A.**

Employers who violate the FMLA "shall be liable to any *eligible employee* affected" for damages and "such equitable relief as may be appropriate." 29 U.S.C. § 2617(a)(1)(A)-(B) (emphasis added). The FMLA thus makes clear that only "eligible employees" may recover under the statute. An eligible employee is one "who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* § 2611(2)(A). Under the FMLA, courts are to look at the Fair Labor Standards Act for guidance in determining the number of hours an employee has worked. *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008). We previously have determined that, under these principles, make-whole relief awarded because of a wrongful termination "may include credit towards the hours-of-service requirement contained in the FMLA's definition of 'eligible employee.'" *Ricco*, 377 F.3d at 600.

Both parties concede that Stimpson has a minimum of 1,156.62 hours of work credit.[2] This differs from the calculation of the district court, which determined that Stimpson only had 938.5225 hours of work credit. *Stimpson*, 2008 U.S. Dist. LEXIS 59154, at *13. For the purposes of this opinion, we will accept the parties' joint stipulation and begin by assuming that Stimpson is entitled to a minimum of 1,156.62 hours of credited time. Stimpson argues that the district court erred by failing to consider whether Stimpson was entitled to additional hours of work credit for the time he would have worked had UPS not illegally terminated his employment. Pointing to the Amended Compliance Specification the NLRB issued following our prior decision enforcing the NRLB's order, Stimpson notes the specification's calculation that UPS should credit him with an additional 435.04 hours for time he would have worked on the package shuttle run to Detroit Metropolitan Airport. The same specification also asserts that UPS should credit Stimpson with 41.9124 additional hours for time he would have worked on UPS's Saturday/Air driving routes for a total of 476.9524 hours of additional work credit. UPS responds that the NLRB never formally adjudicated Stimpson's entitlement to additional hours of credit and that it would be inappropriate for the district court to have considered these calculations.[3]

---

[2]While both sides advanced competing sets of figures before the district court, they now agree that at a minimum Stimpson had 454.49 hours of service from September 25, 2005, until April 29, 2006, and 702.13 hours from April 29 to September 26, 1998. (Pl. Br. at 6; Def. Br. at 40). UPS, however, argues that the resulting total of 1,156.62 hours of service is all that Stimpson is entitled to claim. (Def. Br. at 40.)

[3]The panel has learned that Stimpson and UPS entered into a confidential settlement concerning the backpay amounts owed as to the NLRB's Amended Compliance Specification. The settlement occurred on May 10, 2007, well before the district court's August 5, 2008, opinion in this case. Despite this, neither party informed the district court of the settlement. The proper course of

UPS's argument fails because the very fact that the NLRB failed to adjudicate the issue means that the district court could not ignore the dispute and grant summary judgment based upon a finding of ineligibility. The Amended Compliance Specification cited by Stimpson at the very least raises an issue of triable fact as to whether Stimpson reached the 1,250-hour threshold. Adding the additional 476.9524 hours of time to the 1,156.62 hours both parties concede Stimpson earned would easily render Stimpson qualified under the FMLA. UPS's only response is the alleged impropriety of a court's consideration of the work hours issue before a final adjudicatory order of the NLRB. But the FMLA contains no requirement that the NLRB first consider any contested issues. We find that Stimpson has raised an issue of triable fact as to whether he was an eligible employee and thus find that the district court erred by granting summary judgment on the basis of ineligibility. We will therefore assume for the purposes of our analysis that Stimpson meets the FMLA's 1,250 hour eligibility requirement. *Anderson*, 477 U.S. at 255 (on summary judgment, courts must draw "all justifiable inferences" in the non-moving party's favor).

**B.**

Having found that Stimpson has raised a genuine issue of material fact as to whether he was an eligible employee, we must next consider whether Stimpson "gave the employer notice of his

---

action would have been for the parties to notify the district court that they had settled the compliance issue with the NLRB via a confidential arrangement and were presenting the underlying legal issues to the district court for its consideration. Because the parties failed to do this, the district court did not have a correct understanding of the procedural posture of the NLRB dispute – making the resulting confusion over the work credit hours issue understandable. We have not considered the settlement agreement in deciding the present appeal, as it is not a part of the record considered by the district court. Moreover, the settlement would not be dispositive of the issues before us because the parties did not agree on the proper work-credit hours calculation.

intention to take leave." *Cavin*, 346 F.3d at 719. The pertinent regulations state that the notice provided by the employee "shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). "[T]he employee need not expressly assert rights under the FMLA or even mention the FMLA" in order to provide his employer with proper notice. *Id.* Instead, the employee must merely "give[] the employer enough information for the employer to reasonably conclude that [an FMLA-triggering event] has occurred." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999). This notice should lead the employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, [*sic*] and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c).

Both parties presented evidence before the district court that within twenty-four hours of the original incident, Stimpson phoned at least one of his supervisors, Keith Washington, and informed him that Stimpson had been struck by a car. *See* 29 C.F.R. § 825.302(a) (noting that in an unexpected situation "notice must be given as soon as practicable"). Stimpson's affidavit further asserts that he told another supervisor, Rick Patton, that he would not come into work until he recovered from his injuries. Viewing these facts in the light most favorable to Stimpson, a reasonable employer would inquire further upon learning that a car had struck an employee to determine if FMLA leave was necessary. *See* 29 U.S.C. § 2601(b)(2) (noting that the purpose of the FMLA is to allow employees to take time off for serious health conditions); *Hammon*, 165 F.3d at 451 (notice is sufficient when the employee "gives the employer enough information for the employer to reasonably conclude that an [FMLA-qualifying event] has occurred"). Stimpson's

9

statements to his supervisors contained both notice that an unexpected medical condition had occurred and a declaration that Stimpson would need time off from work to recover. *See* 29 C.F.R. § 825.302(c) (requiring that the employee's notice both "make the employer aware that the employee needs FMLA-qualifying leave" and notify him of the "anticipated timing and duration of the leave."). UPS responded to Stimpson's phone call by seeking more information about Stimpson's condition, culminating in its May 5, 2006, formal request for additional information. This is exactly the course of action the FMLA envisions. *See id.* (stating that employers should "inquire further to determine if the leave is because of a serious health condition" after receiving notice). Although Stimpson certainly could have provided more information to his supervisors, under the minimal requirements of the statute, interpreting regulations, and our case law, we find that the district court erred in its finding that Stimpson failed to provide proper notice.

## C.

Our analysis does not end with whether Stimpson's notice was proper. Proper notice is ultimately irrelevant if Stimpson cannot demonstrate that he sought leave for a legitimate reason under the FMLA. *See Cavin*, 346 F.3d at 719. Stimpson argues that he meets this requirement because he suffered from a "serious health condition" qualifying him for leave. UPS responds that the documentation Stimpson provided did not arrive until well after the seventy-two hour notice letter had expired and that the information did not support a finding that Stimpson suffered any serious harm. Therefore, UPS reasons, its termination of Stimpson was proper.

UPS sent its seventy-two hour letter on May 5, requiring Stimpson to produce information supporting his leave request or face termination. Stimpson did not respond until May 22, seventeen

days later. The regulations state that "[t]he employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so." 29 C.F.R. § 825.305(b). While UPS argues that its labor agreement with the Teamsters allows it to provide a shorter time period of seventy-two hours, the FMLA expressly provides that no collective bargaining agreement, such as that UPS has with the Teamsters Union, may diminish any protection granted by the FMLA. 29 U.S.C. § 2652(b). The fifteen-day period expired on May 20, 2006, two days before Stimpson submitted his medical information.[4] However, UPS terminated Stimpson on May 12, 2006, well before the expiration of the fifteen-day period. Stimpson missed the deadline, but UPS had first terminated him under a mistaken understanding of the applicable deadline.

We need not consider the implications of UPS's dismissal of Stimpson before the fifteen-day period had expired or what effect the termination may have had upon Stimpson's duty to submit timely his medical information. Even deeming all of the medical evidence in the record as timely proffered, Stimpson cannot show he suffered from a serious health condition within the meaning of the Act. Stimpson argues that he had a serious health condition as a result of his collision with the car while on his bicycle. The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care in a hospital, hospice,

---

[4]Because Stimpson did not timely present any medical evidence to the employer, UPS was under no obligation to advise him of the inadequacy of his submission, contrary to the dissent's suggestion.

11

or residential medical care facility; or. . . continuing treatment by a health care provider." 29 U.S.C.

§ 2611(11). The regulations define "continuing treatment" as a

> period of incapacity . . . of more than three consecutive calendar days . . . that also
> involves . . . [t]reatment two or more times by a health care provider . . . or . . .
> [t]reatment by a health care provider on at least one occasion which results in a
> regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(1)-(2) (2003).[5] For example, an outpatient procedure with a follow-up

appointment is not a "regimen of continuing treatment." *See Morris v. Family Dollar Stores of

Ohio, Inc.*, No. 07-3417, 2009 U.S. App. LEXIS 6852, at *17-18 (6th Cir. Mar. 31, 2009).

Here, the medical records indicate that Stimpson suffered only contusions and mild to

moderate back pain. The latter continued because Stimpson declined to fill the prescription the

emergency room physician provided to him. While Stimpson has produced three separate notes from

physicians stating that he could not return to work, the most detailed notation given on the forms is

that Stimpson cannot work "for medical reasons." These notes fall far short of the requirement that

any doctor's certification must contain at a minimum "(1) the date on which the serious health

condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within

the health care provider's knowledge, and (4) a statement that the employee is unable to perform

[his] job duties" in order to be valid. *Novak v. MetroHeatlh Med. Ctr.*, 503 F.3d 572, 578 (6th Cir.

2007) (citing *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004)); *see also* 29

---

[5]The Department of Labor has promulgated new regulations interpreting the phrase "serious health condition." *See* The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934, 68079 (Nov. 17, 2008). However, those regulations only took effect on January 16, 2009, *id.* at 67934; and neither Stimpson nor UPS argue that the regulations should apply retroactively.

U.S.C. § 2613(b). Stimpson also has not provided any other medical evidence to counter the emergency treating physician's final diagnosis of bruises and mild back pain.[6] Importantly, none of the medical information Stimpson has provided suggests that his back pain significantly limited his movement or lifting ability, particularly when treated with the prescription Stimpson refused to take. Because Stimpson cannot demonstrate that he suffered from a serious health condition, he is not eligible for FMLA leave. *See Beaver v. RGIS Inventory Specialists, Inc.*, 144 F. App'x 452, 456 (6th Cir. 2005) (collecting cases where short-term conditions were held not to be serious health conditions); S. Rep. No. 103-3, at 28 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 3, 30 ("Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days and surgical procedures which typically do not involve hospitalization and require only a brief recovery period."); *cf. Morris*, 2009 U.S. App. LEXIS 6852, at *18 (holding that "an outpatient needle biopsy with one follow up visit" is not a serious medical condition).[7] We therefore affirm the judgment of the district court granting summary judgment to UPS on this alternative basis. *See Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005) (an appellate court may affirm on any ground supported by the record).

---

[6]Merriam-Webster's Ninth New Collegiate Dictionary defines a contusion as "injury to tissue usu[ally] without laceration: bruise."

[7]In advocating its position that Stimpson produced sufficient evidence of a serious health condition, the dissent extensively quotes a medical textbook for attorneys (of which it apparently takes judicial notice) and concludes by noting that an acute lumbar strain "can be" a serious health condition. The question here, however, is not whether a condition hypothetically can amount to a serious health condition, but whether Stimpson has produced sufficient evidence to create a genuine issue of fact as to the serious nature of his own health condition.

**III.**

For the foregoing reasons, we affirm the judgment of the district court granting summary judgment as to Stimpson's FMLA claim on the basis that Stimpson did not suffer a "serious health condition" within the meaning of the Act.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I agree with the majority's conclusions that there are genuine issues of material fact as to whether Stimpson is an eligible employee and whether he provided proper notice to UPS before taking leave. However, I disagree with its decision to affirm the district court's grant of summary judgment to UPS on the alternative ground that Stimpson cannot show that he suffered a "serious health condition" within the meaning of the FMLA. Accordingly, I dissent.

The FMLA's definition of "serious health condition" includes an "injury . . . that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). In relevant part, the regulations define "continuing treatment" as:

(i)    A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

    (A)    Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

    (B)    Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i) (2003) (amended 2009).

Thus, Stimpson can avoid summary judgment if he presents sufficient evidence that (1) for more than three consecutive days he was unable to work, and (2) he was treated by a health care professional at least twice during that period. It is undisputed that Stimpson satisfies the latter

element. He was treated by emergency room physicians at Beaumont on back-to-back days, April 29 and April 30, 2006, and evidently later by Dr. Brent Herr ("Dr. Herr") for the same condition.[8]

For two reasons, Stimpson can satisfy the inability-to-work element, as well. First, the medical records provided by Stimpson reveal not only that he suffered "contusions and mild to moderate back pain," Maj. Op. at 11, but also that he was diagnosed by the attending emergency physician at Beaumont on April 30 with an "acute myofascial strain" of the thoracic and lumbar (i.e., lower back) regions. Record on Appeal ("ROA") at 101. Acute lumbar strains are most frequently caused by traumas, such as "injudicious lifting, falls, motor vehicle accidents or athletic injuries." 5-15A CHERISE DYAL & LAURA BRASSEUR, ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 15A.40 (3d ed. 2009). Although the pain is generally greatest immediately after the injury, "the onset of pain may be delayed for several hours, or marked pain and stiffness may not occur until the following day, upon awakening." *Id.* ¶ 15A.43. Symptoms vary depending on the severity of the strain, but "[t]ypically, the patient with a low back strain moves with care, particularly when sitting down or standing up." *Id.* Treatment "includes patient reassurance, brief bed rest during the acute phase of low back pain, a firm mattress with a bed board, and the judicious use of analgesics or nonsteroidal anti-inflammatory drugs (NSAIDs)." *Id.* ¶ 15A.46. Additionally, "the patient should be instructed to avoid activities that intensify back pain." *Id.* The recovery period depends upon the severity of

---

[8]The majority cites *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330 (6th Cir. 2009) (unpublished opinion), which held that an outpatient needle-biopsy procedure with one follow-up appointment was "not a 'regimen of continuing treatment.'" *Id.* at 337 (quoting 29 C.F.R. § 825.114(a)(2)(i)(B) (2003) (amended 2009)). However, that case is inapposite. Stimpson need not show a "regimen of continuing treatment," 29 C.F.R. § 825.114(a)(2)(i)(B), because he is able to show "[t]reatment two or more times by a health care provider," *id.* § 825.114(a)(2)(i)(A).

the strain. Although "[t]he acute back strain patient generally experiences gradual improvement over a period lasting approximately two weeks," patients with severe strains may not recover for up to three weeks. *Id.* ¶ 15A.47. Finally, there is a "significant likelihood of recurrence," and "[w]hile the first episode of back pain is usually the briefest and least severe, the vast majority of such patients are at risk of developing another episode of back pain that will be more severe and longer lasting." *Id.* Clearly, an acute lumbar strain can be a "serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D).

Second, Stimpson provided UPS with three doctors' notes—one from an emergency room physician and two from Dr. Herr—indicating that he would be unable to attend work from April 30 to May 19, 2006, a period of twenty consecutive days. These notes are on their face evidence of incapacity. They also suggest that Stimpson's diagnosed acute myofascial strain was the type that causes serious difficulties, not some milder variety. His injury was so substantial that it kept him out of work for nearly three weeks. This is "sufficient evidence to create a genuine issue of fact as to the serious nature of his own health condition." Maj. Op. at 13 n.8.

The majority suggests that the notes do not meet the specific requirements for medical certification of 29 U.S.C. § 2613(b). Maj. Op. at 11-12. However, even if Stimpson were required to provide medical certification under § 2613, UPS did not satisfy its duty to inform Stimpson that his certification was deficient and give him a reasonable opportunity to cure the asserted deficiency. The pertinent regulations state that "[a]n employer must give notice of a requirement for medical certification each time a certification is required." 29 C.F.R. § 825.305(a) (2003) (amended 2009). The regulations further provide that "[t]he employer shall advise an employee whenever the

17

employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." *Id.* § 825.305(d); *see also Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007). Even assuming that UPS's May 5, 2006 letter to Stimpson requesting "necessary medical documentation to support your absence" gave Stimpson sufficient notice that UPS required medical certification, the record clearly shows that UPS neither advised Stimpson that it found his certification incomplete nor gave him an opportunity to cure the deficiency. ROA at 103. Accordingly, UPS cannot now complain that the certification was deficient.[9]

In sum, given Stimpson's diagnosis of an acute lumbar strain and the three separate doctors' notes stating that he could not return to work until May 20, 2006, I believe that Stimpson has introduced sufficient evidence of a "period of incapacity . . . of more than three consecutive calendar days" due to his injury. 29 C.F.R. § 825.114(a)(2)(i). Accordingly, Stimpson has established a genuine issue of material fact as to whether he received "continuing treatment" for his injury and therefore whether he suffered from a "serious health condition." *Id.* § 825.114(a)(2)(i)(A); 29 U.S.C. § 2611(11)(B). Summary judgment is inappropriate. I respectfully dissent from the majority's contrary view.

---

[9]The majority asserts that UPS had no obligation to notify Stimpson that his certification was inadequate "[b]ecause Stimpson did not timely present any medical evidence" of his condition. Maj. Op. 10 n.5. An employee must provide certification within fifteen days of the employer's request unless he cannot do so practicably under the circumstances. 29 C.F.R. § 825.305(b). UPS requested certification on May 5, making Stimpson's deadline May 20. As the majority notes, the company terminated Stimpson on May 12, closing his window to respond eight days early in contravention of the regulation. Maj. Op. at 10. Stimpson submitted his doctors' notes on May 22, admittedly two days late. The majority's approach, however, would allow UPS to benefit from the fifteen-day requirement despite violating it—a windfall we should hesitate to permit the moving party.

18